NICHOLAS KIP *vs.* THE MAYOR AND ALDERMEN OF THE CITY OF PATERSON.

1. The process required in cases of suits for a penalty incurred by violating an ordinance of the city of Paterson, is sufficient if it sets out the substance of the ordinance and the nature of the offence charged.

2. An ordinance requiring all persons who sell hay or other produce, and deliver the same within the limits of the city, to pay a fee of five cents, is unreasonable and illegal.

*Certiorari* to the Common Pleas of the county of Passaic in a case of appeal.

Argued before Justices ELMER and HAINES.

*Woodruff*, for the plaintiff.

*Williams*, for the defendants.

The opinion of the court was delivered by

ELMER, J. A *certiorari* to the Court of Common Pleas of the county of Passaic brings before us the judgment and proceedings of that court, upon an appeal brought by Kip, from the judgment of a police justice of the city of Paterson, condemning him to pay a penalty of one dollar, in pursuance of an ordinance of the city. The appeal is authorized by a supplement to the charter, and upon the hearing, the court affirmed the judgment of the justice.

It was objected to this judgment, that the summons issued by the justice does not set forth the manner in which the defendant violated the ordinances, as required by the charter. The thirteenth section of the charter dispenses with pleadings, but requires the process to state what ordinance or ordinances the defendant has violated, and the manner of such violation. It appears that the several ordinances alleged to be violated are distinctly and accurately recited by their titles and dates, and it is stated

that the defendants, on a day named, violated the same by refusing and neglecting to pay market fees, upon demand being made of him by the city marshal, the said defendants being subject to the payment of market fees by virtue of the aforesaid ordinance of 1855, for that said defendant did sell a quantity of hay, to wit, one load, to Peter Archdeacon, and did, on the day named, deliver the same to him, within the limits of said city of Paterson, without first having paid market fees therefor, the same being demanded of him as aforesaid.

In the case of *Keeler* v. *Milledge*, 4 *Zab*. 145, this court held that it is sufficient if the process sets out with clearness the offence charged and the substance of that part of the ordinance that has been violated. The process in question does this, and fully apprises the defendant of the acts complained of, whereby he violated the ordinances referred to, and made himself liable to the penalty sued for. The city marshal, alleged to have demanded the market fees, evidently means the marshal of the city of Paterson, whose duty it was, by the ordinances mentioned, to make such demand. The market fee payable for the act of selling and delivering a load of hay, is set forth in the ordinances referred to, and is a uniform sum; so that the fair construction of the complaint is, that it was the prescribed fee which was demanded, and not paid. I am, therefore, of opinion that the summons is sufficiently explicit.

A much more important objection to the judgment was, that the ordinances alleged to have been violated, so far as they require the payment of market fees, are unreasonable, and not authorized by the charter, and are therefore illegal and void. The act to incorporate the city of Paterson, (*Acts of* 1851, *p.* 444,) empowers the city council to pass all such ordinances as they shall think proper, among other things, " for regulating the general police of said city," and "such other necessary by-laws and ordinances for the more effectual suppression of vice and immorality and for the peace and good order of the said city, as they

may deem expedient." An ordinance concerning markets, passed May 15th, 1851, prescribes that every day in the week, except Sunday, shall be market days, and that certain places in the public streets shall be public markets, giving to persons occupying a store the right to a stand in front, upon paying the fee, in preference to others. Persons taking a stand for the purpose of selling country produce are required to pay for such stand the sum of five cents for each time they may occupy the same, and all persons hawking or peddling their produce or other articles through the streets are subject to the same rates of license as those who have stands in the public markets. In August, 1851, a supplementary ordinance, was passed in regard to the fees to be paid by butchers, &c., but not affecting the question now presented. In August, 1853, a supplement prescribes that if any person who is now, or hereafter shall be subject to the payment of market fees, shall neglect or refuse to ·pay the same, upon demand being made by the city marshal, such person shall be subject to a penalty of one dollar for the first offence, and five dollars for every subsequent offence. A further supplement, passed February 5th, 1855, ordains that all persons who shall sell any hay, wood, or country produce of any kind, or other articles usually sold in open market, and deliver the same within the limits of the city of Paterson, shall be subject to the same rates ·of license as persons hawking or peddling their produce or other articles through the streets are subject to, and the same rates shall be collected in the same manner as other market fees are collected.

The general power vested in the council of passing such ordinances as they may deem expedient for regulating the general police, and for the peace and good order of the city, is not an unlimited power, but is subject to the restriction that they shall not be repugnant to the laws of the state. One of those laws, derived from the common law, is, that such ordinances shall be reasonable;

and it belongs to the court to determine what are reasonable. *Paxson* v. *Sweet*, 1 *Green* 196 ; *Commissioners* v. *Gas Company*, 12 *Penn. St. R.* 318. In the case of *Dunham* v. *Trustees of Rochester*, 5 *Cow.* 462, it was held by the Supreme Court of New York, that an ordinance requiring all grocers, hucksters, &c., to pay a tax for a license, was a law in restraint of trade, and, as such, contrary to the general principles of law, and therefore unreasonable and illegal. In the case of *Freeholders of Essex* v. *Barber*, 2 *Halst.* 64, this court held that the act establishing and confirming the charter of the borough of Elizabeth, (*Rev. L.* 97,) which authorized the Court of General Sessions to license inn-keepers, did not thereby confer the power to impose a tax on them for the license. By the 12th section of the charter of Paterson, the council is expressly authorized to license and assess inn-keepers, menageries, and other exhibitions.

It is perfectly clear that there is no power in the council to impose a tax on persons occupying market stands in the streets, or huckstering or selling produce, by way of raising a revenue. The mode of levying taxes for defraying the expenses of the city, and of all the objects and purposes of the act, is in terms prescribed by the charter and supplements, and includes no power to levy market fees. A town hall and market are authorized to be erected whenever such erections shall be called for and decided on by a majority of the inhabitants entitled to vote, and I do not doubt that, in case of such an erection, the incidental power of renting the stalls, and perhaps of even prohibiting sales in the public streets, would follow. But the power to tax those who take a stand in the public streets, even on their own premises, or those who sell as hawkers and peddlers or by private contract, does not exist, unless it can be held to be a reasonable mode of regulating the police and preserving the peace and good order of the city. That those parts of the ordinances which prescribe the market days and the places for market stands are rea-

sonable and proper, was not disputed by the counsel of Kip, and I think cannot be doubted; and it may probably be perfectly competent for the council to regulate hawkers and peddlers, by requiring them to be licensed and otherwise restrained, or even by prohibiting them from using the streets. But the counsel for the city failed to show how the imposition of the tax in question will tend to promote good order. If taxes upon those vending market produce in the streets were justifiable as a means of raising revenue, it might be equal and just to tax those who sell in other modes. But such taxation is not authorized; and even if it be admitted that a tax upon those using market stands, or those hawking and peddling in the streets, may be justified as a proper regulation of police, I can see no possible reason, in this aspect, for levying the tax upon every countryman who sells and delivers a load of hay, or a pound of butter, or a dozen of eggs. It was urged for the city that these persons, when they come into the city limits, have the benefits of the city police, and it is therefore reasonable that they shall contribute to pay them. This might be a good reason why the legislature should have authorized such a tax; but the charter carefully prescribes the manner of defraying all the city expenses, and thus precludes a resort to any other mode. We were referred to the case of *Com.* v. *Robertson,* 5 *Cush.* 438, as holding that the corporation is the best judge of the expediency of an ordinance. If it is within the clear limits of its power, this proposition may be correct. In that case, the ordinance regulated the mode of placing carriages at theatres and places of entertainments, and was, beyond all doubt, a regulation of police.

In my opinion the ordinance the defendant is charged with violating, is not authorized as a mode of taxation, and is not a reasonable exercise of the power of regulating the police of the city, and is therefore illegal and void. The judgment must be reversed.

CITED *in State* v. *Mayor, &c., of Hoboken,* 4 *Vr.* 283; *State* v. *Jersey City,* 5 *Vr.* 431.