NORTH JERSEY STREET RAILWAY COMPANY, PROSECUTOR, v. MAYOR AND ALDERMEN OF JERSEY CITY.

Argued June 10, 1907—Decided November 11, 1907.

1. Where the subject-matter of an ordinance is within the police power of a municipality, and the ordinance is adopted by the proper legislative body in the municipality, the presumption is (until the contrary be shown) that the ordinance is reasonable.
2. The question of the reasonableness of an ordinance is a question of fact, and the burden of proof is upon those who attack it.
3. The court will not interfere unless it is clearly shown that the ordinance, either upon the face of its provisions or by reason of its operation in the circumstances under which it is to take effect, is unreasonable or oppressive.

4. If an ordinance may operate reasonably in some instances or circumstances and unreasonably in others, it is not wholly void, and should not be set aside *in toto*, but should be permitted to stand, to the end that it may be enforced except in particular cases where it may be made to appear that the circumstances render the operation of its provisions unreasonable or oppressive.

5. The ordinance under review regulates the running of trolley cars in Jersey City from the terminals at the Pennsylvania and Erie stations during the evening "rush" hours. The ordinance not appearing to be at all unreasonable in its application to the Erie terminal, and not under all circumstances unreasonable in its application to the Pennsylvania terminal, it will not be set aside *in toto*.

On *certiorari.*

Before Justices HENDRICKSON, PITNEY and TRENCHARD.

For the prosecutor, *Frank Bergen* and *William D. Edwards.*

For the respondent, *J. Merrill Lane, George L. Record* and *Robert Carey.*

The opinion of the court was delivered by

PITNEY, J. This writ brings under review an ordinance adopted by the board of street and water commissioners of Jersey City on January 21st, 1907, and approved by the mayor on January 23d, of which the following is a copy:

"An ordinance regulating the running of trolley cars.

"The mayor and aldermen of Jersey City, by the board of street and water commissioners for and on behalf of the municipality of said city, do ordain as follows:

"Section 1. That all corporations running trolley cars in this city be and they are hereby required, between the hours of half-past five and seven o'clock in the evening, to run from their terminals at the Pennsylvania and Erie stations a sufficient number of cars to provide with a seat every passenger from whom a fare is demanded.

"Section 2. That such companies shall run a sufficient number of cars from the said trolley terminals at the Pennsylvania ferry and the Erie ferry during the hours of five-

thirty to seven P. M., that persons desiring transportation thereon shall not be kept waiting longer than five minutes.

"Section 3. Any violation of any provision of this ordinance shall render the company violating the same liable to a fine or penalty of $50 for each offence."

It is admitted by counsel for the prosecutor that whatever power is possessed by the city to pass an ordinance of this character is properly to be exercised by the board of street and water commissioners. Nor is it disputed that the subject-matter of the ordinance—the regulation of street railway companies in the use and operation of their public vehicles of conveyance, with due regard to the comfort, safety and health of the passengers transported, and to the convenience of passengers desiring transportation—is fairly within the police power of the city.

The sole contention is that the ordinance is unreasonable because it is impossible to comply with it. It being conceded that its subject-matter is within the police power of the municipality, and that the board of street and water commissioners is the proper legislative body to exercise that power, the presumption is (until the contrary be shown) that the ordinance is reasonable. The question of reasonableness is a question of fact, and the burden of proof is upon those who attack the ordinance to show its unreasonableness. The court will not interfere unless it is clearly shown that the ordinance, either upon the face of its provisions or by reason of its operation in the circumstances under which it is to take effect, is unreasonable or oppressive. *Trenton Horse Railroad Co.* v. *Trenton,* 24 *Vroom* 132, 140; *Traction Company* v. *Elizabeth,* 29 *Id.* 619, 622; *Ivins* v. *Trenton,* 39 *Id.* 501, 505.

Upon the face of the present ordinance its unreasonableness is not demonstrated, nor do counsel so contend. The contention is that the number of persons desiring to take passage upon the cars of the prosecutor at the Pennsylvania terminal within the hours mentioned in the ordinance (what are known as the "rush" hours), and the conditions of ordinary street traffic upon the streets by which the cars approach

and leave the terminus, are such as to render the duty ·imposed upon the prosecutor by the ordinance impossible of performance.

The evidence shows that the present prosecutor and the Jersey City, Hoboken and Paterson Street Railway Company are the only corporations running trolley cars in Jersey City from the terminals at the Pennsylvania and Erie railroad stations, and it is to these companies alone that the ordinance applies.

It is to be observed at the outset that no attempt has been made to show that the ordinance is impossible of observance at the Erie terminal, or is otherwise unreasonable so far as that terminal is concerned. To this extent, therefore, we find the ordinance reasonable.

Practically the entire evidence and the whole stress of the prosecutor's argument are directed to the condition of affairs existing at the terminus of the street car lines at the Pennsylvania railroad ferry.

Nine lines of street cars use this terminus, and for their accommodation there are seven tracks in the car shed. The cars all come into the terminal by way of York street, and on this street for about two blocks they are confined to a single track. They all leave the terminal by way of Exchange place and Montgomery street, and here, likewise, for about two blocks, are confined to a single track. The headway between cars on the different car lines during the rush hours varies between two and twelve minutes, and a car of one or another of the various lines leaves the Pennsylvania terminal at intervals approximating forty seconds during the afternoon rush hours.

The testimony renders it clear that during these hours a large proportion of the street cars leave this terminal unduly crowded, and that for this reason a considerable number of would-be passengers are obliged to walk instead of using the cars.

The practical difficulties, from the standpoint of the street railway companies, are enhanced by the circumstances that

the incoming cars are occasionally detained by blockades in the street. There is also occasional congestion of traffic along the outgoing track on Exchange place and Montgomery street, but this does not so directly tend to interfere with the performance of the duty imposed by the ordinance, since that duty relates to the number of cars that are to be started from the terminal.

The principal difficulty at the terminal results from the large number of ferry-boats that reach Jersey City at that point from New York, between five-thirty and seven P. M., crowded with passengers, who, for the most part, desire to make their way homeward by the trolley cars. The boats arrive somewhat irregularly, and it is no doubt practically quite difficult to handle all the passengers with comfort upon the outgoing cars. Nevertheless, the resulting situation is such as to render it proper that the traction companies should be required to do all that reasonably lies within their power to furnish a sufficient number of cars to comfortably accommodate the arriving passengers and prevent their being detained unduly at the terminal.

We are satisfied from the evidence that the prosecutor might, with proper effort, despatch from this terminal during the rush hours in question a considerably greater number of cars than it does at present. How many more could be despatched we are unable from the evidence to determine, nor can it be determined without a practical test. But it is significant that no effort has as yet been made by the prosecutor to comply with the requirements of the ordinance, and no practical test has been attempted.

No doubt, under any schedule or system of running the cars, interruptions may occasionally be caused by extraordinary blockades in the street, or by other circumstances over which the traction company has no control. The ordinance, however, should be given a reasonable interpretation, and it is, not to be supposed that the company would be held liable for the results that might occasionally be produced by causes beyond its control.

Upon the whole, we cannot say that the requirements of the ordinance with respect to the despatch of cars from the Pennsylvania terminal are either impossible of performance or so difficult of performance as to render the ordinance oppressive. The operation of the ordinance is therefore not wholly unreasonable.

Exceptional circumstances that may render its performance impossible in particular instances may be availed of by way of defence, if action is brought for recovery of the penalty that the ordinance prescribes.

If an ordinance may operate reasonably in some instances or circumstances and unreasonably in others, it is not wholly void and should not be set aside *in toto*. *Pennsylvania Railroad Co.* v. *Jersey City,* 18 *Vroom* 286; *Nicoulin* v. *Lowery,* 20 *Id.* 391, 394; *Trenton Horse Railroad Co.* v. *Trenton,* 24 *Id.* 132, 140; *Gaslight Company* v. *Rahway,* 29 *Id.* 510; *Hamblett* v. *Asbury Park,* 32 *Id.* 502, 504; *Central Railroad Co.* v. *Elizabeth,* 41 *Id.* 578, 581.

The ordinance before us not appearing to be at all unreasonable in its application to the Erie terminal, and not under all circumstances unreasonable in its application to the Pennsylvania terminal, it should be permitted to stand, to the end that it may be enforced except in particular cases, where it may be made to appear that the circumstances render the operation of its provisions unreasonable or oppressive.

The writ of *certiorari* will be dismissed, with costs.

A like result is reached in the case of Jersey City, Hoboken and Paterson Street Railway Co. *v.* Jersey City, which involves an attack upon the same ordinance based upon the same grounds, and submitted upon the same evidence and arguments.