ALLIE BULLOCK, PROSECUTRIX, v. J. ARTHUR WOODING, CLERK OF THE CITY OF LONG BRANCH, NEW JERSEY, AND THE CITY OF LONG BRANCH, COUNTY OF MONMOUTH, NEW JERSEY, RESPONDENTS.

Submitted May 2, 1939—Decided September 11, 1939.

Before Justices PARKER, BODINE and PERSKIE.

For the prosecutrix, *Robert S. Hartgrove.*

For the respondents, *Leo J. Warwick.*

The opinion of the court was delivered by

PERSKIE, J.   The writ of *certiorari* in this cause brings up for review two ordinances providing for the maintenance and regulation of bathing beaches in the city of Long Branch, and the decision of the city clerk of that city, acting under

the challenged ordinances, rejecting prosecutrix' application for "a permit or license" to use the bathing facilities of Beach No. 1.

The first ordinance was passed on June 6th, 1933; the second was passed on June 7th, 1938.

Both ordinances appear to be innocuous. Generally stated, these ordinances, taken together, provide that the municipally owned or municipally controlled lands of the city of Long Branch, lying east of Ocean avenue, in that city, are to be maintained and operated as public beaches; that all persons desiring the "use" of the bathing facilities and "access" to said beaches shall "register" in the city clerk's office and upon paying the prescribed fee shall receive from said clerk "a badge, check or other insignia" which must be "worn" by the registrant, or "shown" at the request "of any officer or employe of the city;" that all badges, checks or other insignia issued are not transferrable; that the city clerk is authorized and directed" to issue (the) badges, checks and other insignia of distinctive design or color for the use of the respective beaches;" that all permits or licenses issued are subject to such regulations then in force or which may be promulgated during the period covered by the license or permit; that the governing authorities may adopt "additional rules and regulations for the government, use and policing of such beaches and places of recreation not inconsistent with the provisions of the ordinances."

Additionally, the second ordinance provides that it was enacted "for the purpose of avoiding congestion on any of said beaches, and for a proper distribution of patrons, and for the better protection and safety of patrons on said beaches * * *;" and that all persons violating any provisions of the ordinance shall upon conviction forfeit and pay a fine not exceeding $50 for each offense and upon failure to pay such fine may, in the discretion of the judge hearing the cause, be imprisoned in the county jail for a period not exceeding thirty days.

Pursuant to the authority, under the ordinances, the beach front in Long Branch was divided into four sections: Beach No. 1, Beach No. 2, Beach No. 3 and Beach No. 4.

How were the provisions of the ordinance administered as to prosecutrix? We turn to the proofs. They disclose, in substance, that prosecutrix, a member of the negro race, registered with the city clerk, tendered her license fee in accordance with the terms of the ordinances in question, and applied for a "badge for bathing facilities for Beach No. 1." The city clerk refused to issue the permit as requested; he told her that he would issue her a badge which would entitle her to bathing facilities but only at Beach No. 3.

It seems to be admitted that the true reasons for the clerk's action is that the city clerk was carrying out an agreed and determined policy or plan of the city authorities to segregate all members of the negro race on Beach No. 3 and no other beach. This policy or plan has no relation as to where such negro person lived with relation to the four beaches; and it had no relation to the proclaimed purposes as set forth in the second ordinance. It is clear that the agreed and determined policy or plan of regulation is based upon the admitted premise that the governing authorities did not want members of the black race to intermingle with members of the white race while using the beach and bathing facilities of the city of Long Branch.

We desire to mark the fact that while the writ brings up for review both ordinances and the decision or action of the city clerk, prosecutrix' argument, submitted on brief, is wholly confined to her contentions that these ordinances are invalid *in toto*.

Prosecutrix' argument is not sound. The ordinances, as already observed, are not invalid *in toto*. On the contrary, on their face, they appear to be a valid exercise of power. *Cf. R. S.* 40:48-1 and 2; *R. S.* 5:1-1. They are enactments which have for their purposes public safety and general welfare. *Cf. Cliffside Park Realty Co.* v. *Cliffside Park,* 96 *N. J. L.* 278, 279; 114 *Atl. Rep.* 797; *North Jersey Street Railway Co.* v. *Jersey City,* 75 *N. J. L.* 349, 351; 67 *Atl. Rep.* 1072. The fact that these ordinances are illegally administered does not render them void *in toto*. Under such circumstances, it is the settled law that prosecutrix cannot have these ordinances set aside as unreasonable until she first be

convicted under them. It is only in that manner that the illegal administration of an ordinance, not void *in toto,* may properly be brought before the court for review. *Pennsylvania Railroad Co.* v. *Jersey City (Court of Errors and Appeals),* 47 *N. J. L.* 286; *Hamblet* v. *Asbury Park,* 61 *Id.* 502, 504; 39 *Atl. Rep.* 1022; *North Jersey Street Railway Co.* v. *Jersey City, supra; Neuman* v. *Hoboken,* 82 *N. J. L.* 275, 278; 82 *Atl. Rep.* 511; *Cliffside Park Realty Co.* v. *Cliffside Park, supra; Independent Pennsylvania Oil Co.* v. *Mayor, &c., Gloucester,* 102 *N. J. L.* 502, 504; 134 *Atl. Rep.* 554; *Prinz* v. *Borough of Paramus,* 120 *N. J. L.* 72, 74; 198 *Atl. Rep.* 284; *affirmed,* 121 *N. J. L.* 585; 3 *Atl. Rep.* (2d) 584.

We deem inapplicable to this case the rule that the status of a prosecutor for a writ of *certiorari* may not be impugned on final hearing when that status is not attacked by proofs or other proceedings prior to final hearing. *Jordan* v. *Borough of Dumont (Court of Errors and Appeals),* 105 *N. J. L.* 197; 143 *Atl. Rep.* 843; *Jackson* v. *Mayor, &c., Gloucester,* 6 *N. J. Mis. R.* 451; 141 *Atl. Rep.* 743; *Demarest* v. *Mayor, &c., Bergenfield,* 7 *N. J. Mis. R.* 484, 485; 146 *Atl. Rep.* 63. Here respondents do not question the status of prosecutrix as a citizen and taxpayer but rather question prosecutrix' present right, under the circumstances exhibited, as a citizen and taxpayer to challenge the ordinances involved.

From all that has been written, it necessarily follows that the writ must be dismissed, but without costs.

In light, however, of the claim made that these ordinances constitute a denial of prosecutrix' civil rights (compare for analogy the cases of *Pierce* v. *Union District School Trustees,* 46 *N. J. L.* 76; *affirmed,* 47 *Id.* 348; *Raison* v. *Board of Education, Berkeley,* 103 *Id.* 547; 137 *Atl. Rep.* 847, based upon a statute which merely declares a constitutional right), we are unwilling to pass the point *sub silentio.* It is, of course, settled that the dignities, equalities and rights of citizenship cannot legally be denied to members of the negro race. *Cf. Buchanan* v. *Warley,* 245 *U. S.* 60; 62 *L. Ed.* 149; *Patterson* v. *Board of Education, Trenton,* 11 *N. J. Mis. R.* 179; 164 *Atl. Rep.* 892; *affirmed,* 112 *N. J. L.* 99; 169 *Atl. Rep.* 690.

What prosecutrix was entitled to, under the proofs, was a permit or license to one of the beaches without regard to the color question.

Accordingly, as indicated, the writ is dismissed, but without costs, and without prejudice to an application by prosecutrix for a writ of *mandamus* to compel respondents to grant her the permit or license which we have stated she was entitled to have.