CHARLES SEAWELL ET AL., PLAINTIFFS-RESPONDENTS, v. JAMES L. MacWITHEY ET AL., DEFENDANTS-APPELLANTS, AND CHARLES R. ERDMAN, JR., ET AL., DEFENDANTS-RESPONDENTS.

Argued June 13 and June 20, 1949—Decided June 30, 1949.

564

*Mr. Walter C. Ellis* argued the cause for the defendants-appellants.

*Mr. Chester K. Ligham* (*Mr. Theodore D. Parsons,* Attorney General) argued the cause for the defendants-respondents, Charles R. Erdman, Jr., and William T. Vanderlipp.

*Mr. Jerome C. Eisenberg* (*Mr. Herbert H. Tate,* attorney; *Mr. Israel Spicer,* on the brief) argued the cause for the defendants-respondents, Charles Seawell et al.

*Mr. Richard F. Green* filed a brief for the American Veterans Committee, as *amicus curiæ.*

*Mr. Victor H. Miles* filed a brief for the American Jewish Committee and B'Nai B'Rith (Anti-Defamation League), as *amici curiæ.*

The opinion of the court was delivered by
VANDERBILT, C. J. This is an appeal by the City of East Orange, its Mayor and the members of its City Council, from a judgment of the Chancery Division of the Superior Court

dismissing the complaint in this cause as against the defendants Charles R. Erdman, Jr., Commissioner of the Department of Economic Development of New Jersey, and William T. Vanderlipp, Deputy Administrator of the Department of Economic Development, and granting final judgment in favor of the plaintiffs and against the appellants on the plaintiffs' motion for judgment on the pleadings. The appeal was taken to the Appellate Division of the Superior Court but it has been certified by this court on its own motion as part of a program of clearing the appellate dockets before the summer recess.

Pursuant to *R. S.* 55:14G–1 *et seq.,* the City of East Orange acquired four separate sites on South Arlington Avenue, North Clinton Street, Elmwood Avenue and Rhode. Island Avenue and commenced the construction of multiple dwelling units thereon primarily for veterans. Under the terms of this legislation known as the Veterans Emergency Housing Act and by contracts entered into between the city and the State, the State is required to advance approximately 55% of the cost of the projects and upon their completion the city is required to lease the projects to the State for a period of five years. The contracts further provide that the city appoint a "Projects Manager" for the projects which are to be managed and administered by the city in keeping with the regulations promulgated by the Commissioner of the Department of Economic Development; should the city fail or. refuse to manage and administer the projects properly, the Commissioner "may, upon ten days' written notice to the municipality, appoint another as agent \* \* \*." The Commissioner has promulgated regulations, among others, establishing priorities for tenants based entirely on the degree of distress of the individual applicant and his veteran or non-veteran status. These regulations provide that "there shall be no discrimination against any person because of race, creed,. color, national origin or ancestry." There is a similar provision in the statute, *R. S.* 55:14G–21.

The complaint herein was filed on November 23, 1948, by nine Negro veterans of World War II setting forth their ser-

vice and honorable discharge, their residence in East Orange, their compliance with the formal requirements of the statutes and regulations with respect to this type of public housing, their need of housing and their timely applications for accommodations in these particular housing projects. In addition the complaint alleged that the project at South Arlington Avenue had been completed and that tenants had been and were being selected for said project, and that in the selection of tenants for occupancy of the South Arlington Avenue project, as well as those located on Elmwood and Rhode Island Avenues, the defendants had "adopted a policy, custom and usage of refusing to admit qualified negro applicants  *  *  * solely because of race or color and have refused to act upon or consider their applications for admission to" the three projects. The complaint charged a violation of various pertinent constitutional, statutory and regulatory provisions as to discrimination and sought a restraint against all of the defendants from denying to the plaintiffs and other qualified Negro applicants "the equal opportunity to be considered *  *  *  solely because of the race and color of such applicants, from making any designation because of race, creed, color, national origin or ancestry in the leasing of any units *  *  *." Thereafter the defendant city and the municipal officials filed an answer which did not materially controvert any of the allegations contained in the complaint and admitted the leasing of 26 units in the South Arlington Avenue project to white tenants and their policy to assign the Negro veterans who first qualified and were accepted as tenants to the North Clinton Street project. They denied that it was their policy that when the North Clinton Street project had been fully occupied they would thereafter exclude the plaintiffs or others of the Negro race from the other projects, provided such persons qualified for admission in accordance with the schedule of priorities promulgated by the Department of Economic Development.

A motion was thereafter made by the plaintiffs for judgment on the pleadings. The defendant State officials moved to strike the complaint as to them on the grounds that it did

not state a cause of action as to them, that the complaint did not charge them with any wrongdoing, and that full adequate and complete relief might be awarded the plaintiffs against the other defendants. The Chancery Division struck the complaint as to the defendant State officials and entered judgment on the pleadings in favor of the plaintiffs, declaring that the defendant municipality and its officials had denied the plaintiffs consideration for housing accommodations by reason of their color and that such action denied the plaintiffs the equal protection of the laws contrary to the Fourteenth Amendment and further constituted discrimination against them contrary to the provisions of *R. S.* 55:14G–21, and restrained the said defendants from denying to the plaintiffs or any other persons otherwise qualified consideration for occupancy at any one of the four projects on account of race, creed, color, national origin or ancestry, from segregating the plaintiffs or any other persons in any one or more of said projects because of their race, creed, color, national origin or ancestry, from postponing or delaying the admission of plaintiffs or any other qualified persons to said housing accommodations on such grounds, and from discriminating in any manner against the plaintiffs or any other qualified persons in the renting of said accommodations. The City of East Orange and its named officials have appealed from these determinations.

At the oral argument in this court counsel for the appellants stated that it was not their intention to segregate the applicants for apartments whose applications had been, accepted by the Veterans' Permanent Housing Committee of the City Council and the East Orange Veterans' Selection Committee, the latter appointed to assist in the process of screening the 750 applicants for apartments. He further informed the court that these two committees had approved the applications of 18 Negro veterans and of 74 white veterans. In the latter group are included the 26 applicants referred to in the complaint as being tenants of the South Arlington Avenue project which was the first to be completed. Counsel also stated that they had no intention to segregate in the North Clinton Street project the 18 Negro veterans, whose

applications had been approved; indeed, they could not, for there are but 14 apartments in that project. Counsel further informed the court that the Negro population of East Orange was about 10% and that the number of Negro applicants already approved was about 15%. Since the litigation started, the North Clinton Street project and the Elmwood Avenue project, with 40 apartments, have both been completed. The Rhode Island Avenue project, with 20 apartments, was delayed by strike but it is now nearly completed.

A question was raised at the oral argument as to the appointment and powers of the Veterans' Permanent Housing Committee of the City Council and the East Orange Veterans' Selection Committee, an advisory committee of citizens. Subsequently counsel were asked to produce all of the official records bearing on the appointment, powers and activities of these committees. It then developed that there were no official records, and that the City Council of East Orange had never authorized the appointment of a Veterans' Permanent Housing Committee, counsel stating to us that the Committee had its origin in a caucus of the City Council. Nor was there any municipal authorization for the East Orange Veterans' Selection Committee which had acted with the Veterans' Permanent Housing Committee in screening the applicants for admission as tenants to the four projects. In fact, there was no ordinance, resolution or other action of the City Council dealing with these committees or with the selection or acceptance of any of the many applicants for apartments. Nor did the matter come in any form before the Mayor as the chief executive officer of the city, who by statute has the veto power with respect to the actions of the City Council, *P. L.* 1908, *c.* 250, § 35, *N. J. S. A.* ("Acts saved from repeal") 40:103–5. There is an entire lack of valid municipal action by the City of East Orange with reference to filling the apartment houses as they have been completed. Such leases as have been executed have been signed on behalf of the city, as the agent of the State, by the project manager, who, incidentally, is not a party to this suit. It thus appears that the only basis for the injunction issued against the City of East Orange and

its officials is an affidavit of the chairman of the legally unauthorized Veterans' Permanent Housing Committee filed in answer to an application for a preliminary restraint. In that affidavit the chairman stated that it was the intent and policy of the city to assign the first Negro tenants recommended by the screening committee to the North Clinton Street project, "where the facilities were at least equal to the other projects," stating that "This policy was established by the city after careful study and consideration of experience in general relationships obtained by the governing body in temporary veterans' housing projects." Manifestly there is no basis in any action of the city or its governing body or its Mayor to justify these statements. We are of the opinion that an injunction should not go against a municipality and its officials in the absence of actual or threatened wrongdoing by them. It should be noted here that the plaintiffs make no objection to the continuance in possession of the occupants of the twenty-six units in the South Arlington Avenue project, the plaintiffs' contentions running solely to further occupancies of this and the other three projects.

In view of the complete lack of official municipal action by the appellants, and taking into consideration the greatly changed state of affairs which now exists in contrast with that which prevailed on the entry of the judgment below, and having in mind the desirability of having all of the actual facts before us before passing on constitutional questions, we are of the opinion that the judgment below should be reversed as to the appellants and the cause remanded to the Chancery Division of the Superior Court with directions to hear the case on its merits, the plaintiffs and the defendants being given leave to amend and supplement their pleadings to state the facts as they presently appear. The judgment as to the defendants Erdman and Vanderlipp is affirmed.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, BURLING and ACKERSON—6.

*For affirmance*—None.