24 N.J. Super. 91 (1952)
93 A.2d 582
KIRSCH HOLDING COMPANY, A BODY CORPORATE OF THE STATE OF NEW JERSEY, AND IRVING B. KIRSCH, PLAINTIFFS-APPELLANTS,
v.
THE BOROUGH OF MANASQUAN, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 3, 1952.
Decided December 12, 1952.
*94 Before Judges EASTWOOD, GOLDMANN and FRANCIS.
Mr. William R. Blair, Jr., argued the cause for appellants (Messrs. Parsons, Labrecque, Canzona & Combs, attorneys).
Mr. Robert V. Carton argued the cause for respondent (Messrs. Durand, Ivins & Carton, attorneys).
The opinion of the court was delivered by GOLDMANN, J.A.D.
On August 22, 1949 the Borough Council of the Borough of Manasquan adopted an ordinance entitled "An Ordinance Regulating the Use of the Beachfront of the Borough of Manasquan and Providing Penalties for the Violation Thereof." The Chancery Division of this court determined  contrary to plaintiffs' contention  that the ordinance was not ultra vires but a valid exercise of the police power, and that a certain reservation contained in the deed of dedication from Seacoast Real Estate Company (hereinafter called "Seacoast"), one of plaintiffs' predecessors in title, to defendant borough was void. The court entered judgment in favor of defendant, and plaintiffs appeal.
On September 8, 1914, Seacoast was the owner of a large tract of ocean front land in the Borough of Manasquan. On that date the company conveyed to the borough the beach front portion of the tract, running from Ocean Avenue on the north to Manasquan Inlet on the south  a distance of about 4,400 feet. The deed of dedication recited, among other things, that the lands were granted and conveyed "for public purposes and for a place of resort for public health and recreation * * *." The conveyance contained the following reservation:
"The Company reserves for itself, its successors, grantees and tenants the right to maintain bathing grounds, ropes, boats and other appliances on said beach front for bathing purposes." *95 The deed was to take effect upon the completion by the borough of a 1,000-foot boardwalk within a period of two years. This requirement was admittedly fulfilled.
Seacoast subsequently conveyed portions of the remainder of its tract to the following: (1) Jersey Shore Company, whose grantee, in turn, made some 80 conveyances out of the lands involved; (2) American Timber Company, which later sold only one lot but has 271 tenants on the rest of its lands; and (3) Manasquan Beach, Inc., which made about 120 conveyances before the borough foreclosed the balance of its holdings; the borough has since made about 70 conveyances. Seacoast voluntarily dissolved in 1942, some years after disposing of all its Manasquan lands.
At the time of the trial there stood on the lands which Seacoast retained after the 1914 deed of dedication 646 bungalows, 20 general business establishments, 11 real estate offices, 6 hotels and rooming houses, and 1 church. Municipal records showed 691 real estate assessments on properties making up the original Seacoast holdings, and 736 separate family water service connections to structures on these lands.
Plaintiff Kirsch Holding Company is presently the owner of a small parcel of land that was part of the lands sold by Seacoast to Manasquan Beach, Inc. It fronts 110 feet on the east side of First Avenue, Manasquan, has a depth of about 152 feet, and is located between the avenue and the dedicated beach. All deeds in the Kirsch company's chain of title contain a clause that the property therein described is conveyed together with all the appurtenances. In addition, the deed out of Manasquan Beach, Inc. and all subsequent deeds in the chain of title  except for a sheriff's deed in foreclosure  contain this clause:
"Together with any right, title or interest that the party of the first part may have by virtue of a deed from the Seacoast Real Estate Company to Manasquan Beach, Inc. dated April 6, 1926 * * * covering that part of the beach 110 feet in width between the easterly monumented beach front line above mentioned to the line of high water in the Atlantic Ocean * * *."
*96 Plaintiff Irving B. Kirsch is lessee of the Kirsch company property and operates a pavilion thereon which houses concessions, a restaurant, apartments and bathhouses. Kirsch operates the latter, some 155 in number. The remaining facilities are sublet to others. The daily charge for a bathhouse during the week is 75¢, and on Saturdays, Sundays and holidays $1. No charge is made for the use of the beach. Plaintiffs had operated the bathhouses for about three years preceding the trial; bathhouses had been rented on these premises for more than 40 years.
An exposition of the terms of the August 22, 1949 ordinance regulating the use of the Manasquan beach front is important to the determination of this appeal. Section 1 provides that "the following rules and regulations shall be observed * * *":
(a) Every person, except children of the age of 12 or under, using the beach front and waters adjacent thereto for bathing, or clad in bathing attire, must first register with agents of the borough employed for that purpose, giving such information as may be required.
(b) Upon registering, the person is to be given a badge, check or other insignia, to be worn conspicuously at all times.
(c) A person registering on or before July 31 shall pay a season charge of $3, with the right to a $1 refund if the badge is redeemed before August 1. A person registering on or after August 1 shall pay $2, and one registering for the day is to pay the daily charge of 50¢.
(d) "Said charge is made for the purpose of defraying the cost of providing for, improving, preserving, maintaining, policing, and regulating the beachfront and providing for the protection and safety of bathers using said beachfront."
(e) The borough council is authorized to employ personnel and purchase supplies necessary to carry out and enforce the terms of the ordinance.
(f) The borough council and its authorized agents may cancel the registration and revoke the badge of any person who violates the provisions of the ordinance.
(g) Any badge, check or insignia issued is for the exclusive use of the registrant and may not be transferred.
(h) No person except children 12 years old or under may use the beach front or adjacent waters for bathing, or enter upon the beach clad in bathing attire, unless registered.
(i) The borough council is authorized "to adopt such other rules and regulations as may be necessary for the proper control and regulation of the beachfront and waters adjacent thereto." *97 Section 2 provides for a fine of not more than $50 or imprisonment for not more than 30 days for any ordinance violation or false registration.
The borough began to enforce the ordinance on June 28, 1950. Plaintiffs immediately filed their complaint seeking a declaratory judgment. They obtained restraints against the municipality which were dissolved by the judgment under review.
On this appeal plaintiffs present three basic arguments for reversing the Chancery Division judgment: (1) the ordinance is ultra vires and therefore void; (2) the reservation in Seacoast's deed of dedication is valid and inures to plaintiffs' benefit; and (3) the ordinance, if enforced against plaintiffs and those deriving their right to use the dedicated beach through them, would violate the constitutional provisions prohibiting laws impairing the obligations of contracts.
The presumption is that a properly enacted ordinance is reasonable and valid. The burden of establishing its invalidity is on the person asserting it. State v. Mundet Cork Corp., 8 N.J. 359, 370-371 (1952); American Grocery Co. v. Board of Commissioners of New Brunswick, 124 N.J.L. 293, 297 (Sup. Ct. 1940), affirmed 126 N.J.L. 367 (E. & A. 1941); 2 Dillon, Municipal Corporations (5th ed. 1911), § 649, p. 989; 6 McQuillin, Municipal Corporations (3d ed.), § 20.08, p. 18.
A municipality has no inherent jurisdiction to make laws or adopt regulations of government. Being a creature of the Legislature, it is a government of enumerated powers, acting by delegated authority. A municipal corporation "possesses only such rights and powers as have been granted in express terms, or arise by necessary or fair implication, or are incident to the powers expressly conferred, or are essential to the declared objects and purposes of the municipality." Edwards v. Mayor, etc., of Moonachie, 3 N.J. 17, 22 (1949), reversing 3 N.J. Super. 10 (App. Div. 1949); State v. Mundet Cork Corp., 8 N.J. 359, 370 (1952); *98 Fred v. Mayor, etc., of Old Tappan, 10 N.J. 515 (November 1952); 1 Cooley, Constitutional Limitations (8th ed. 1927), p. 391. The Constitution of 1947 enjoins liberal construction in favor of municipalities of any law concerning them. Art. IV, Sec. VII, par. 11. Our inquiry is whether the challenged ordinance is within the grant of power existent at the time it was adopted.
R.S. 40:48-2 and R.S. 40:61-1 (f) furnish complete authority for the adoption of any ordinance regulating the use of a beach front. R.S. 40:48-2 provides:
"Any municipality may make, amend, repeal and enforce such other ordinances, regulations, rules and by-laws not contrary to the laws of this state or of the United States, as it may deem necessary and proper for the good government, order and protection of persons and property, and for the preservation of the public health, safety and welfare of the municipality and its inhabitants, and as may be necessary to carry into effect the powers and duties conferred and imposed by this subtitle, or by any law."
The Supreme Court, speaking through Chief Justice Vanderbilt in Fred v. Mayor, etc., of Old Tappan, above, only recently declared that this statute plainly "must be considered as an express grant of broad general police powers to municipalities." Such interpretation, said the court, "has been made impregnable by the continued legislative acquiescence therein, by the mandate of Article IV, Section VII, paragraph 11 of the Constitution of 1947 that acts concerning municipalities be liberally construed, and by the adherence thereto of the more recent judicial decisions," citing, among other authorities, Edwards v. Mayor, etc., of Moonachie, above, and Michaels v. Township Committee, etc., of Pemberton, 3 N.J. Super. 523 (Law Div. 1949).
If more specific authority is required, it is found in R.S. 40:61-1 (f), which provides that the governing body of any municipality may:
"By ordinance make and enforce rules and regulations for the government, use and policing of all such public parks, open spaces, playgrounds, beaches, water fronts and places for public resort and *99 recreation and to provide penalties for violations thereof. All such rules and regulations shall be conspicuously posted in all places where effective;".
Compare the more limited power given by R.S. 40:48-1 (9).
The general rule is that municipal power to regulate a particular activity embraces or implies the power to license as a mode of regulation and to impose a license fee sufficient in amount to cover the cost of regulation.
"Means and instrumentalities through which policing authority is brought to bear on a subject to be regulated involve costs and expenses. It is only fair to require business, traffic, acts or things that necessitate policing to pay this expense." 9 McQuillin, Municipal Corporations (3d ed. 1950), § 26.27, p. 54;
38 Am. Jur., Municipal Corporations, § 327, p. 20. But the power to regulate does not authorize the imposition of a tax for revenue.
In State, Benson, pros. v. Mayor, etc., of Hoboken, 33 N.J.L. 280 (Sup. Ct. 1869), the court had before it an ordinance fixing permit fees for the construction of vaults in streets, adopted pursuant to a charter provision authorizing the adoption of ordinances regulating such construction. In setting aside the ordinance Justice Depue said (at pages 282-283):
"In the classification of corporate powers, the distinction between the power of taxation, and the usual police powers, which are granted for the maintenance of peace and good order in the city, and the administration of its internal affairs, is well settled. The functions of the latter are not primarily the raising of revenue. Incidentally, the public treasury may be benefited, as by the imposition of fines or penalties for the violation of city ordinances; by license fees, when the power is specifically to license, and exact license fees; or under powers to regulate markets, by the exaction of market fees, for the use of corporate property. But in all such cases the court must see that the imposition of the penalty, or the requirement of fees for the exercise of privileges, is a reasonable exercise of the powers of legislation granted to the corporation. * * *
* * * If the claim of the city is to be justified, it must be sustainable under those undefined powers which reside in a municipal corporation of passing ordinances for the maintenance of good order *100 within the corporate limits. Under such powers municipal ordinances for licensing hack drivers, and cartmen, and also shows and exhibitions, and the requirement of a reasonable license fee thereon, have sometimes been sustained, but in such cases the court, when called upon to pass upon the validity of such ordinances, must see that they are adapted to the maintenance of good order, and that the means adopted are a reasonable mode of attaining that end."
The same justice returned to the subject in State, North Hudson County Ry. Co., Pros. v. Mayor, etc., of Hoboken, 41 N.J.L. 71, 79-80 (Sup. Ct. 1879). What he had to say has been repeated in texts and numerous opinions, with and without benefit of credited source:
"* * * A power to license is of the same nature as a power to regulate. Under a charter authorizing the regulation of a business or occupation, an ordinance compelling persons engaged in such business or occupation to take out licenses may be adopted if a license is an appropriate method of regulating the prosecution of the business. * * * And if the power to license is given in express words, it nevertheless is included in the classification of police powers. The exaction of a license fee for revenue purposes is clearly an exercise of the power of taxation, and cannot be sustained, unless the charter plainly shows an intent to confer that power. * * *
The distinction between the power to license, as a police regulation, and the same power when conferred for revenue purposes, is of the utmost importance. If the power be granted with a view to revenue, the amount of the tax, if not limited by the charter, is left to the discretion and judgment of the municipal authorities; but if it be given as a police power for regulation merely, a much narrower construction is adopted; the power must then be exercised as a means of regulation, and cannot be used as a source of revenue. Cooley on Taxation 408; Cooley on Const. Lim. 201."
State, Muhlenbrinck, pros. v. Long Branch Commissioners, 42 N.J.L. 364 (Sup. Ct. 1880); Mulcahy v. Mayor, etc., of Newark, 57 N.J.L. 513 (Sup. Ct. 1895); Blanke v. Board of Health of Hoboken, 64 N.J.L. 42 (Sup. Ct. 1899); Cape May v. Cape May Transp. Co., 64 N.J.L. 80 (Sup. Ct. 1899); Margolies v. Atlantic City, 67 N.J.L. 82 (Sup. Ct. 1901); La Porta v. Board of Health of Hoboken, 71 N.J.L. 88 (Sup. Ct. 1904); Gaynor v. Roll, 79 N.J.L. 402 (Sup. Ct. 1910); Koettegen v. Mayor, *101 etc., of Paterson, 90 N.J.L. 698 (E. & A. 1917); Michaels v. Township Committee, etc., of Pemberton, 3 N.J. Super. 523 (Law Div. 1949). Cf. Board of Com'rs. of City of Newark v. Local Government Board of New Jersey, 133 N.J.L. 513 (Sup. Ct. 1945). And see 2 Dillon, Municipal Corporations (5th ed. 1911), § 665, p. 1001; 9 McQuillin, Municipal Corporations (3rd ed. 1950), § 26.28, p. 56; 38 Am. Jur., Municipal Corporations, § 321, p. 14.
The purpose of the exercise by a municipality of the police powers granted it by the Legislature is the abatement of nuisances, the protection of the health, safety and welfare of its inhabitants, and the preservation of good order within its limits. What provisions do we find in the Manasquan ordinance aimed at achieving any of these ends? The ordinance purports to regulate the use of the beach front, but except for the requirements of registration and the conspicuous wearing of the badge we find none of the regulatory provisions that might possibly give color to the asserted purpose. There is no provision that badges be serially numbered for identification purposes; none aimed at preventing congestion on the beach; none regulating the conduct of those who use the beach  for example, rules prohibiting littering the beach, or sports that would discomfort or perhaps injure others, or dressing or undressing on the beach. There is no provision limiting the hours when the beach may be used or swimming allowed, or limiting swimming to a certain distance from the shore. Instead of at once setting up the regulatory scheme, the borough council authorizes itself "to adopt such other [sic] rules and regulations as may be necessary for proper control and regulation of the beachfront and waters adjacent thereto." R.S. 40:61-1 (f) requires such power to be exercised by ordinance. The record is silent as to the adoption of any regulatory measure in aid of the ordinance under attack. We conceive that any such measure would have been brought to the court's attention by defendant, in view of plaintiffs' attack on the ordinance as in fact non-regulatory.
*102 Section 1 (f) of the ordinance gives the governing body or its authorized agents the right to cancel the registration or revoke the badge of any person violating "any of the provisions of this ordinance in spirit or terms." Not a single provision is set forth which a registrant might violate. He would search in vain for the "rules and regulations" which the ordinance enjoins him to observe in using the beach and its adjacent waters.
Upon analysis, therefore, the ordinance is not one adopted in the exercise of the municipal police power. It speaks of "regulating" but does not do so. All we have is the flitting phantom of suggested regulation.
Stripped of the protective coloration given it by the words "regulating" and "regulation," the ordinance in its real aspect is a revenue-raising measure. Nowhere in the statutes do we find authority given to defendant borough to impose a fee for the use of its beach front for revenue purposes. The Home Rule Act (R.S. 40:52-1, as amended; R.S. 40:52-2) contains no such grant of power. As has already been pointed out, the power to levy license fees for revenue is not inherent in municipal corporations. An ordinance which attempts to do so without a statutory grant of power is ultra vires the municipality and void. This has been the law since earliest days. Freeholders of Essex v. Barber, 7 N.J.L. 64 (Sup. Ct. 1823); Kip v. City of Paterson, 26 N.J.L. 298 (Sup. Ct. 1857). The principle is restated in the long line of cases cited above in our discussion of regulatory ordinances which impose a reasonable fee, and finds its latest expression in Edwards v. Mayor, etc., of Moonachie, 3 N.J. 17, 21 (1949) and Zullo v. Board of Health, etc., of Woodbridge, 9 N.J. 431, 437 (1952). 1 Cooley, Constitutional Limitations (8th ed. 1927), pp. 419-420; 9 McQuillin, Municipal Corporations (3rd ed. 1950), § 26.29, p. 57; 16 Id. § 44.03, p. 9 and § 44.05, p. 13; 38 Am. Jur., Municipal Corporations, § 341, p. 29.
Defendant cites Bullock v. Wooding, 123 N.J.L. 176 (Sup. Ct. 1939), as expressly establishing the validity of *103 the ordinance in question. We do not consider that case controlling. The court there dealt with two Long Branch ordinances concerning the beach front. The first appears to be like the one under consideration. The second provided that it was enacted to avoid congestion on the four beaches established by the municipality, and "for a proper distribution of patrons." The latter ordinance thus introduced at least one measure of regulation which is totally lacking here. The issue in the Bullock case was not whether the ordinances were in fact regulatory and a true exercise of the police power. The real question was whether there had been a denial of prosecutrix' civil rights. The city clerk had rejected her application for a permit to use the bathing facilities of Beach No. 1 and instead offered her a badge of admission to Beach No. 3, which the city authorities had set aside for members of the Negro race in pursuance of a segregation policy. The court held she was entitled to a permit to one of the beaches without regard to the color question. It observed that although the ordinances were illegally administered, they were not invalid in toto, but "on their face, they appear to be a valid exercise of power" (italics ours), citing R.S. 40:48-1 and 2. Obviously, the issue raised here was not before the court in the Bullock case, nor considered by it.
The enactment of L. 1950, c. 324 (N.J.S.A. 40:92-7.1) does not validate the ordinance under review. That law became effective July 24, 1950, almost a year after the Manasquan ordinance was adopted and just short of two months after this action was instituted. A reading of the 1950 act in the light of the stated purpose of the Seacoast deed of dedication and the language of the present ordinance would indicate that it must have been intended to provide the grant of power necessary to support an ordinance like Manasquan's. Defendant states that it does not rely on N.J.S.A. 40:92-7.1, nor could it. Edwards v. Mayor, etc., of Moonachie, 3 N.J. 17, 21 (1949). Defendant may, of *104 course, take full advantage of the 1950 legislation by adopting a new and proper ordinance.
We are in accord with the conclusion of the Chancery Division that the reservation contained in the deed of dedication from Seacoast to defendant is inconsistent with and repugnant to the grant contained therein. 18 N.J. Super. 112, 120-122 (1952). Seacoast reserved the right "for itself, its successors, grantees and tenants * * * to maintain bathing grounds, ropes, boats and other appliances on said beachfront for bathing purposes." Plaintiffs contend that this right was appurtenant to Seacoast's lands and passed to all subsequent grantees under deeds purporting to convey the premises granted "with the appurtenances." They argue, further, that this reservation was without limitation as to the number of persons or properties entitled to benefit therefrom, and is available to all subsequent grantees and tenants. If this be so, then the reservation vitiates the grant of the beach front land "for public purposes and as a place of resort for public health and recreation." Some 270 subsequent grantees of Seacoast's lands, and the 271 tenants of one of the direct grantees alone, could claim the right to maintain "bathing grounds, ropes, boats and other appliances" on the beach. Besides being totally inconsistent with the grant, such reservation is vague and indefinite. There is no limitation on the location, size and number of the "bathing grounds" or the location and number of the boats, ropes and other appliances. The reservation must be held to be void. Eckert v. Peters, 55 N.J. Eq. 379 (Ch. 1897); 16 Am. Jur., Dedications, § 25, p. 371; Tiffany, Real Property, § 957, p. 54 (3rd ed. 1939).
Accordingly, the judgment of the Chancery Division with respect to the validity of the ordinance is reversed and with respect to the validity of the reservation affirmed.