30 N.J. Super. 116 (1954)
103 A.2d 632
FLORENCE TAYLOR, ET AL., PLAINTIFFS,
v.
JOSEPH J. LEONARD, ET AL., INDIVIDUALLY AND AS MEMBERS OF THE HOUSING AUTHORITY OF THE CITY OF ELIZABETH, NEW JERSEY, ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided March 8, 1954.
*117 Mr. J. Leroy Jordan, attorney for plaintiffs.
Mr. George R. Walsh, attorney for defendants.
SULLIVAN, J.S.C.
Defendant corporation is the public Housing Authority of the City of Elizabeth, New Jersey, created under the provisions of the public housing laws of this State, N.J.S.A. 55:14A. The individual defendants are the executive director and also the duly appointed commissioners of said housing authority.
This action is brought by 13 American citizens of the Negro race and charges that defendants, in the operation and management of the public housing projects under defendants' control, have adopted a policy of discrimination against Negroes in general and these plaintiffs in particular. Plaintiffs claim that they are all eligible for admission to the housing project under defendants' control and have made timely application for admission. Eight of the plaintiffs have received formal approval of their applications from said housing authority but have never had an apartment in any of the projects assigned to any of them, although some of the approvals are dated as far back as October 19, 1951. The other plaintiffs, it is charged, have never been able to have any official action taken on their applications, although some of said applications were made and filed as early as May of 1950.
It is the plaintiffs' contention that the delay in making apartments available to Negroes in general and these plaintiffs in particular results from a policy practiced by defendants *118 of admitting Negroes to the housing projects on the basis of a quota or percentage system. It is further charged that those Negroes finally admitted are housed in a segregated part of one of the projects, namely, Pioneer Homes, and are not permitted as tenants in the other housing project under defendants' control known as Mravlag Manor. In both projects, it is alleged, there are 828 housing units of which number 72 housing units in the segregated section of Pioneer Homes have been allotted to members of the Negro race. On the basis of the allegations heretofore set forth, these plaintiffs charge that defendants, in operating the aforesaid public housing projects, are guilty of discrimination against Negroes solely because of their race or color. Such discrimination, say the plaintiffs, violates our State and Federal Constitutions and they ask this court to enjoin defendants from continuing a policy of quota admissions and segregation of Negroes.
The defendants have questioned the eligibility of some of the plaintiffs for admission to the public housing projects under their control. However, they do concede that some of the plaintiffs have been approved for admission and are waiting for available housing units to be assigned to them.
It is frankly admitted by defendants that Negroes are admitted to the projects under their control on the basis of a quota system which, according to defendants, has been in effect since 1938. Under this quota system it is conceded that the 72 housing units in Pioneer Homes are the only units made available to Negro families. The use of a quota system is defended in paragraph 11 of the answer on the ground that the percentage of units allocated to Negroes in the public housing projects approximates the percentage of Negro population in the City of Elizabeth and therefore is a fair quota to which plaintiffs should not object.
Defendants also admit that those Negroes admitted to the public housing projects of the City of Elizabeth are housed in a segregated area. Such segregation, according to defendants, is not wrong because the Negroes admitted are given the same housing facilities as other tenants. Finally, defendants argue that segregation, of itself, is not forbidden by *119 state law or Constitution, or by the Constitution of the United States.
There is no validity whatever to the arguments advanced by the defendants. The use of any quota system in admitting Negroes to public housing projects is discriminatory and therefore a violation of Article 1, paragraph 5, of the New Jersey Constitution of 1947, which provides as follows:
"No person shall be denied the enjoyment of any civil or military right, nor be discriminated against in the exercise of any civil or military right, nor be segregated in the militia or in the public schools, because of religious principles, race, color, ancestry or national origin."
It is also a violation of the very act under which the defendant Housing Authority is incorporated. Said act, N.J.S.A. 55:14A-7.5 provides as follows:
"For all of the purposes of the act to which this act is a supplement, no person shall because of race, religious principles, color, national origin or ancestry be subject to any discrimination."
Since defendants are respectively a municipal agency and public officials performing a necessary public function under the Housing Act, it is also a violation of section 1 of the Fourteenth Amendment of the Constitution of the United States.
It is immaterial that the quota actually used bears some relation to the percentage of Negro population in the particular municipality.
The evil of a quota system is that it assumes that Negroes are different from other citizens and should be treated differently. Stated another way, the alleged purpose of a quota system is to prevent Negroes from getting more than their share of the available housing units. However, this takes for granted that Negroes are only entitled to the enjoyment of civil rights on a quota basis.
*120 A policy of segregation of Negroes in a public housing project is likewise discriminatory and therefore a violation of the same laws and constitutional provision cited above in the discussion of the quota system. It makes no difference that equal facilities are provided to Negroes. Segregation necessarily implies that Negroes must be kept separate and apart from all other people. Like the quota system it is premised on the concept that Negroes are different. This State, in protecting civil rights, does not recognize any distinction based on color, race or creed. Segregation has been uniformly struck down by the courts of this State whenever the question was raised. Patterson v. Board of Education of Trenton (swimming pool), 11 N.J. Misc. 179 (Sup. Ct. 1933), affirmed 112 N.J.L. 99 (E. & A. 1934); Bullock v. Wooding (bathing beach), 123 N.J.L. 176 (Sup. Ct. 1939); Seawell v. MacWithey, 2 N.J. Super. 255 (Ch. Div. 1949). In the latter case Judge Stein enjoined the practice of segregation of Negroes in a public housing project, holding the practice to be discriminatory and therefore unconstitutional. This ruling was modified on appeal but only on the question of the sufficiency of evidence of present discrimination. 2 N.J. 563 (1949).
In the Seawell v. MacWithey case, supra, 2 N.J. Super., at page 264, Judge Stein wrote the following:
"Here the State itself has not offended. Quite the contrary. Under the very law permitting these public projects there is an explicit prohibition against discrimination because of race, creed, color, national origin or ancestry. By this legislation the people of this State declared its policy that such public housing projects, financed in whole or in part with public funds, shall be equally and commonly available to all citizens, free of that discrimination condemned by the statute. Is this not as it should be? The public funds emanate from common sources, without distinction of color, race or creed. The duties and responsibilities of citizenship are discharged alike by the white and colored citizens, witness the effort made, the blood shed, and the lives sacrificed on common battle fields by citizens of all kinds of color, creed and race. Man's sense of justice, coupled with an enlightened understanding of our common humanity, would dictate that if there be no segregation in the field of civic duty and sacrifice, there be none in the realm of human dignity and equality."
*121 The eventual survival of any form of government necessarily depends on the equal apportionment of the rights and privileges of citizenship as well as its obligations and duties among all its citizens irrespective of race, color or creed. Such a principle has long since been the keystone of our national and state form of government.