STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. MUNDET CORK CORPORATION, DEFENDANT-APPEL-LANT.

Argued December 3, 1951—Decided January 21, 1952.

362

*Mr. Nicholas Conover English* argued the cause for the appellant (*Messrs. McCarter, English & Studer*, attorneys).

*Mr. William L. Vieser* argued the cause for the respondent (*Messrs. Herrigel, Bolan & Vieser*, attorneys).

The opinion of the court was delivered by

BURLING, J.  This is an appeal by the Mundet Cork Corporation, a New Jersey corporation, defendant, from a judgment of conviction entered against it in the Union County Court upon a complaint charging it with violation of an air pollutant ordinance of the plaintiff, the Township of Hillside, a municipal corporation of this State.  The appeal was addressed to the Superior Court, Appellate Division; prior to hearing there certification of the appeal to this court was granted on our own motion.

The defendant processes raw cork in the manufacture of cork board insulation, cork gaskets and similar products, a business which it has been conducting at its plant in Hillside since 1918. About 60 per cent of the output of the plant consists of products made from cork board which is the end result of a steam baking process. This process is described as one wherein quantities of ground cork are placed in metal containers or moulds, baking chambers, then compressed and subjected to contact with superheated steam, which, as it passes through the cork, causes the particles to become fused or sealed together. The steam is then drawn off through a water wash and passed into the air outside the plant through a gooseneck stack.

On August 28, 1929, the township committee of the plaintiff passed an ordinance entitled "An Ordinance Regulating the Emission of Smoke from Chimneys of Buildings (Boilers, Engines, etc.) within the Township of Hillside" which prohibited "the emission of dense smoke from any smokestack or chimney connected with any stationary engine, steam boiler, locomotive * * * or other similar machine, or from any smokestack or chimney of any * * * establishment, or private residence using oil burners, or any building used as a factory, or for any purpose of trade, or from any tar kettle, or other machine, furnace or contrivance within the corporate limits of the Township of Hillside, which smoke contains soot or other substance in sufficient quantities to permit the deposit of such soot or other substance on any surface within the limits of said Township." An ordinance adopted on July 22, 1931, amended sections 1 and 2 of the ordinance. The pertinent section 1(b) of the amended ordinance contains the following language:

"(b) the production or emission within the Township of Hillside of smoke, fly ash or fumes, the density or shade of which is equal to or greater than No. 2 of the Ringelman Smoke Chart, as published by the United States Bureau of Mines, *or which is so dense as to be dimly seen through at the point of emission into the external air from any stack or open fire*, except that of a locomotive for a period

or for periods aggregating twelve minutes or more in any period of one hour, * * * is hereby prohibited." (Emphasis supplied.)

Section 2 of the amended ordinance contains the following pertinent language:

"* * * any owner or manager of any locomotive engine, steam roller, steam derrick or tar kettle, or other machine, furnace or contrivance within the limits of the Township of Hillside who permits or allows to be emitted from any such chimney or smokestack, locomotive, engine, steam roller, steam derrick, tar kettle or other machine, furnace or contrivance, or private residence using oil burners, smoke, fly ash or fumes in violation of Section 1 of this ordinance shall, upon receipt of notice in writing duly served upon him or them by the Smoke Inspector, without delay, file a plan or statement of proposed alterations to remedy the cause of such violation, and shall, within thirty days after the receipt of such notice, entirely eliminate said smoke, fly ash or fumes, as violate this ordinance, and upon failure so to do, upon conviction thereof in a court of competent jurisdiction, be fined not more than One Hundred Dollars ($100.00) * * *."

The defendant was charged with a violation of section 1(b) and non-compliance with section 2 of the foregoing ordinance (as amended) by complaint in writing dated August 31, 1950. Judgment of conviction was entered against it in the Municipal Court of the Township of Hillside on October 7, 1950. The defendant appealed to the Union County Court. The appeal resulted in a trial *de novo* to the Union County Court, Law Division, without a jury; the judgment of conviction of the defendant by that court was filed on June 14, 1951, and the defendant appealed.

The appeal presents several questions, including construction of the ordinance aforementioned, proof of violation thereof, and constitutional rights of the defendant.

We consider first the question of construction of the ordinance. The premise of the defendant is that the ordinance is ambiguous and must be construed to exclude the vaporous emanation, exhaust steam from the cork baking process, expelled into the atmosphere from defendant's stack. This question must be resolved against the defendant.

The emphasis in this type of ordinance for centuries has been placed on smoke regulation. (In response to a petition by the citizens of London, a royal proclamation was issued by Edward I in England in 1306 to prohibit artificers from using sea coal, as distinguished from charcoal, in their furnaces, and making use of sea coal a capital offense. See *Prentice on Police Powers, p. 35* (1894)). In more recent generations other air pollutants have been subjected to control. See *Regulation of Smoke and Air Pollution in Pennsylvania,* 10 *U. Pitt. L. Rev.* 493 (1948-1949). Ordinances designed to regulate and control air pollution in the interest of the public health and welfare have been held valid and enforceable in this State. *Bd. of Health of Weehawken Twp. v. N. Y. Central R. Co.,* 4 *N. J.* 293, 298 (1950). With this general background in mind we turn to examination of the meaning of the ordinance now before us. The defendant relies upon four rules of construction: that judicial construction of ordinances is governed by the same rules as judicial construction of statutes; that where an ordinance is ambiguous reference may be had to its title to determine the legislative intent of the enacting body; that penal ordinances are to be strictly construed; and that the doctrine of *ejusdem generis* is pertinent and if applied would confine the meaning of the terms used in the amended ordinance ("smoke, fly ash, or fumes") to emissions caused by combustion. We are of the opinion that the foregoing terms of the ordinance in question are not ambiguous and therefore the rules of construction adverted to by the defendant are not appropriate. A penal ordinance or statute is to be strictly construed and will not be held to create a liability when the words of the enactment are not clear in fixing it, but where there is no ambiguity it is settled that there is no need to resort to this rule of construction. *State v. Brenner,* 132 *N. J. L.* 607, 611 (*E. & A.* 1945); *Perrine Terrace Land Co. v. Brennan,* 101 *N. J. L.* 487, 490 (*Sup. Ct.* 1925); *Board of Health v. Werner,* 67 *N. J. L.* 103, 104 (*Sup. Ct.* 1901); *Camden and Amboy Railroad Co. v. Briggs,* 22 *N. J. L.* 623,

644 (*E. & A.* 1850). The doctrine of *ejusdem generis*, that a word is known from its associates, is an aid to construction where the expression is of doubtful meaning. *Ford Motor Co. v. N. J. Dept. of Labor and Industry*, 5 *N. J.* 494, 503 (1950); *Edwards v. Mayor, etc., of Borough of Moonachie*, 3 *N. J.* 17, 23, 24 (1949). Likewise, generality of language, or the natural import of the words employed according to their common sense, clearly and unambiguously expressed in the enacting clause of a statute or ordinance will not be restrained or narrowed by a particular reference in the title or preamble. *City Affairs Committee v. Jersey City*, 134 *N. J. L.* 180 (*E. & A.* 1946); *Hackensack Golf Club v. Hackensack Improvement Commission*, 107 *N. J. L.* 416 (*Sup. Ct.* 1931); *Den, Lloyd v. Urison*, 2 *N. J. L.* 212, 225–226 (*Reprint pages* 197, 210–211) (*Sup. Ct.* 1807).

Smoke was the subject regulated by the ordinance adopted in 1929, but air may be polluted by the presence of varied foreign matter, such as fluorine, fly ash, sulphur dioxide, and fumes. Compare 10 *U. Pitt. L. Rev., supra,* at *p.* 494. The word "fume" in common parlance is defined, *inter alia,* as a noun to be "a smoky or vaporous exhalation, usually odorous," and as a verb to mean "to throw off fumes, as in combustion or chemical action; to rise up, as vapor," and also "to pass or move in fumes or vapors" and "to throw off in vapor, or as in the form of vapor." *Webster's New International Dictionary* (*2d ed.* 1947), *p.* 1018. Noxious fumes, gases or vapors have long been considered in the category of public nuisances. See *Blackstone's Commentaries* (*Browne's ed.* 1897), *pp.* 432, 641; 39 *Am. Jur., Nuisances,* secs. 58, 59, *pp.* 340, 341. If we were to deprive the word "fumes" as used in the amended ordinance of its natural import, we would render impotent the clearly and unambiguously expressed intention of the legislative body. Limitation of the meaning of "fumes" as used in the ordinance to products of combustion would render its inclusion meaningless, for the word "smoke" includes visible products of combustion in the normally accepted sense. The references

in the ordinance to sources of smoke, fly ash or fumes, including "engine, steam roller, steam derrick or tar kettle, or other machine, furnace or contrivance," clearly are all inclusive and not restricted to apparatus used for combustion. We hold that a vaporous exhalation containing contaminants is a "fume" within the meaning of the word "fumes" as used in the ordinance in question.

It is next urged by the defendant that the judgment is against the weight of the evidence in that the proofs do not establish beyond a reasonable doubt a violation of the ordinance by the defendant. This contention is not supported by the record. One of the township's witnesses testified that on the day when the alleged violation of the ordinance occurred they "observed heavy fumes, vapor fumes coming out of the gooseneck stack" of the defendant's plant "the full depth of the 18-inch stack for about 50 feet high spread over the neighborhood," so dense that "you could not see through it," and it continued for about 30 minutes. Another of the township's witnesses, while corroborating the foregoing testimony, also testified that the emission was a "gaseous smoke substance" with an irritating, obnoxious odor, that it could be "barely seen through" for 30 to 50 feet from the point of emission from the stack, that it had a brownish cast, the appearance of "adulterated steam." This witness also testified that the emission from the stack "has a residue that comes forth from the stack in the steam, and when the steam evaporates into the air, the residue which is heavier than air, settles to the ground and settles on the homes in the vicinity, and along with it is a pungent odor that is prevalent at that time when the plant is in operation" and is noticeable at a considerable distance from the defendant's plant. It was also testified that the defendant was notified of the alleged violation and that the defendant filed no plan or statement of proposed alterations to remedy the cause thereof, as required by the ordinance, and failed to comply with the requirement of the ordinance that the condition constituting the violation be eliminated within 30 days after notice.

The defendant's witnesses admitted that the exhaust steam or substance emanating from the gooseneck stack has a "characteristic" odor, which is rather strong and is such as made by burning leaves or wood but claimed it is not irritating. The defendant's witnesses also testified that the odor clings to the clothing; that it is detectable at times as one approaches the plant. They further testified that there are natural rosins in the cork and that the odor comes from those rosins; that the rosins leave the baking mould with the steam; that some of the rosins are solids but the solids are eliminated by a water wash; that the steam as it leaves the stack contains volatiles described as rosin contaminates or chemicals that are dropped out as it condenses and these volatiles may be acid distillates. It was also admitted that a gaseous substance is contained in the exhaust steam, and a gas can be a fume; that there is a percentage of both solid material and volatile substances discharged with the steam into the atmosphere.

The defendant's witnesses gave testimony that the exhaust has the appearance of pure white steam but is not pure steam. They testified that it contains contaminates resulting from the cork baking process. The defendant's plant manager testified that nothing had been done to change the conditions, although there was considerable testimony as to experimentation in that direction.

The township, on rebuttal, introduced the testimony of residents of the neighborhood of the defendant's plant, to the effect that the odor "smells like cork" and caused coughing; that the smoky emission from defendant's gooseneck stack could not be seen through; that it creates a "cloud bank" making driving difficult and that it is "stifling"; that the aroma clings to anything exposed to the substance.

To summarize, there is no support for the defendant's contention that the judgment was against the weight of the evidence. The proofs are beyond a reasonable doubt that there was on the day in question emission from defendant's contrivance of fumes so dense as to be dimly seen through

at the point of emission into the external air for periods aggregating 12 minutes or more in any period of one hour; that the defendant failed to file a statement or plan of proposed alterations to remedy the condition and failed to eliminate the condition within 30 days after notice as provided in the ordinance.

The defendant contends, however, that in order to support a conviction under an ordinance such as the one under consideration, the township must prove that the defendant's conduct constituted a common law nuisance, and that there exists in the record no proof that any person had been injuriously affected by the vaporous emanation from its plant. This appears to be an argument that regardless of density of the emission, no conviction may be had unless injury is proved.

A statute or ordinance of this nature constitutes a legislative declaration that certain conditions or circumstances causing air pollution are deemed a public nuisance and are prohibited for the reason that they constitute a hazard to the public welfare. Enactment of a regulatory ordinance of this type is a function of the police power conferred on municipalities by *R. S.* 40:48–2 (originally enacted in 1917) for the protection of the welfare of their residents. It is exercised for prevention of threatened injury and not solely for punishment of accomplished harm. The exercise of the legislative judgment is not subject to judicial superintendence unless it is plainly beyond the realm of the police power or palpably unreasonable. *City Affairs Committee v. Jersey City, supra; Amodio v. Board of Commissioners of West New York,* 133 *N. J. L.* 220, 225 *(Sup. Ct.* 1945); *Township of Dover v. Witt,* 7 *N. J. Super.* 259 *(App. Div.* 1950); 6 *McQuillin, Municipal Corporations* (3d ed. 1949), *sec.* 20.05, *pp.* 10–13. See also 5 *Id. secs.* 18.19–18.27, *pp.* 446– 469. In determining the question of reasonableness cognizance must be taken of the problem to be solved by the municipality, for example the requirement necessary to minimize the offensive character of the conduct to be regulated.

*Prinz v. Paramus,* 120 *N. J. L.* 72, 74 (*Sup. Ct.* 1938), affirmed *per curiam* 121 *N. J. L.* 585 (*E. & A.* 1939). The testimony, which has been adverted to above, showed that persons had been stifled and annoyed by the fumes from the defendant's stack, and that driving on the public streets was at times made dangerous thereby. These are elements of injury, and except for erroneous exclusion of proffered evidence at the trial it appears that other comparable evidence of injury would have been introduced. Further, *actual* injury to health or property is not necessary to the proof of conviction of violation of the ordinance, since whether persons or property are or may be injured by the continued exercise of the prohibited conduct or industrial operation is relative to the question of reasonableness of the ordinance and not to the question of fact as to what constitutes violation thereof. *Bd. of Health of Weehawken Twp. v. N. Y. Central R. Co., supra,* at *pp.* 299–301; *Annett v. Salsberg,* 135 *N. J. L.* 122, 125 (*Sup. Ct.* 1947), affirmed 136 *N. J. L.* 194 (*E. & A.* 1947); *Benton v. Kernan,* 127 *N. J. Eq.* 434, 462–463 (*Ch.* 1940), modified 130 *N. J. Eq.* 193, 201 (*E. & A.* 1941); *Board of Health of Lyndhurst v. United Cork Co.,* 116 *N. J. Eq.* 4, 12–13 (*Ch.* 1934), affirmed 117 *N. J. Eq.* 437 (*E. & A.* 1935); *Oechsle v. Ruhl,* 140 *N. J. Eq.* 355, 359 (*Ch.* 1947). Although the exercise of police powers by municipalities must be in conformity with statutory authority, *Borough of Jamesburg v. Hubbs,* 6 *N. J.* 578, 583 (1951), either expressly granted or arising by fair implication, or incidental to powers expressly conferred, *Edwards v. Mayor, etc., of Borough of Moonachie, supra,* at *p.* 22, the Constitution of 1947, *art. IV, sec. VII, par.* 11, enjoins liberal construction in favor of municipalities of any law concerning them. The ordinance brought before us for consideration on this appeal shows a substantial tendency to promote or protect the public safety, health and general welfare. Compare *Morgan v. Collingswood,* 104 *N. J. L.* 13, 16 (*Sup. Ct.* 1927). The burden of proof is upon those who attack the ordinance to show clearly that it

is unreasonable. *Fraser v. Township of Teaneck,* 1 *N. J.* 503, 507 (1949); *Morgan v. Collingswood, supra; North Jersey Street Ry. Co. v. Jersey City,* 75 *N. J. L.* 349 (*Sup. Ct.* 1907); 6 *McQuillin, Municipal Corporations* (*3d ed.* 1949), *sec.* 20.08, *pp.* 18–20. The following quotation from *Welsh v. Morristown,* 98 *N. J. L.* 630, 634 (*Sup. Ct.* 1923), affirmed *per curiam* on opinion below, 99 *N. J. L.* 528 (*E. & A.* 1924) is appropriate:

"Avowedly, the ordinance was enacted in the exercise of the police power. Every citizen holds his property subject to the proper exercise of this power, either by the legislature directly or by public or municipal corporations to which the legislature may delegate it. It is well settled that laws and regulations of this character, relating to the comfort, health, convenience, good order and general welfare of the inhabitants, though they may disturb the enjoyment of individual rights, are not unconstitutional, though no provision is made for compensation for such disturbances. They do not appropriate private property for public use, but simply regulate its use and enjoyment by the owner. If he suffers injury, it is either *damnum absque injuria,* or, in theory of the law, he is compensated for it by his sharing the general benefits which the regulations are intended and calculated to secure. *Dill. Mun. Corp.* 555, § 301; *Munn v. Illinois,* 94 *U. S.* 113."

Refer also to *Northwestern Laundry v. Des Moines,* 239 *U. S.* 486, 60 *L. ed.* 396, 401 (1916).

The ordinance here in question is a reasonable exercise of legislative authority.

The final question to be disposed of is the asserted defense of the doctrine of "unavoidable necessity." The effect of such assertion runs to the reasonableness of the ordinance. Regardless of the philosophy of the doctrine, the facts do not support the application thereof.

The pertinent evidence is as follows: Bruns, vice-president and director of the defendant, testified that the defendant had been conducting experiments in the control of steam, including washing, ozination, chlorination, electrical precipitation and secondary combustion, and that the defendant was working on and installing a carbon eliminator, which it hoped would be successful, but which it had not disclosed

in detail because the process was believed patentable. Magrum, a vice-president of defendant in charge of manufacturing and engineering at the Hillside plant, testified that additional equipment had been ordered by the defendant and the problem was well on the way to solution, although delivery of the equipment might suffer delay due to the national emergency. Magrum testified that it was possible through the use of a mere condensation device to eliminate the emission of steam into the atmosphere, that such a method had not been employed because "it becomes a mechanical problem" to take out the necessary amount of heat, that it is a matter of expense and space but the matter of expense would not be insuperable. He testified that no mechanical process could be introduced to absorb the steam coming from a stack *of the diameter used by the defendant.* Magrum further testified that use of absorbent oils proved "quite promising" in experimental work but had not been used in actual operation although use of such oils might be a feasible solution to the condition. He admitted that it would be feasible to eliminate the fumes and that the conditions were susceptible to exclusion; that laboratory tests had the "appearance" of success. Simeral, who largely related his testimony to plants of other companies with different equipment and at different locations, was offered as an expert witness and testified that there is no way of eliminating *all* odors emanating from baking cork. He testified that at a Camden, N. J., plant there is no exhaust steam emitted into the atmosphere "because we condense the steam immediately after it leaves the moulds." However, he also testified that at the Camden plant an unlimited supply of Delaware River water was available for use in the condensation equipment. Schwartz, an expert not familiar with the details of operation of the defendant's plant, testified that there is no "scientifically effective and economically feasible" method for "*entirely* eliminating all steam and odor bi-products of the cork baking process" (emphasis supplied) but we note that *entire* elimination of *all* steam and odor is not required

by the ordinance, which prohibits fumes of designated densities.

Analysis of the foregoing testimony, introduced by defendant to prove unavoidable necessity, shows that experimentation in various methods of elimination of the exhaust vapor condition at defendant's plant have been conducted; that some of these experiments show success but have not been applied; that a condensation device could be used but has not been used because "it is a mechanical problem," although the expense is not insuperable; and that a condensation method is in successful use elsewhere in a locality where river water is available for the type of condensation apparatus involved. There was no evidence introduced to show that compliance with the provisions of the ordinance by reduction of density of the emission, as opposed to complete elimination thereof, had been attempted or was not possible.

It is to be noted that the ordinance affords the defendant an opportunity to present a plan to remedy the cause of the violation, and contemplates the withholding of enforcement within a limited time pending the performance of a plan designed for compliance therewith.

The defendant finally contends that its motion to dismiss, made at the close of the township's case, should have been granted. The motion was addressed to the trial court on the sole ground that the ordinance applied only to smoke and there was no proof of emission of products of combustion. This motion was properly denied. We have discussed the construction of the ordinance *ante,* and our conclusions in that respect govern our determination as to the motion.

We find no merit in the remaining questions presented.

For the reasons stated, the judgment of the Union County Court is affirmed.

*For affirmance*—Justices HEHER, WACHENFELD, BURLING and ACKERSON—4.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE and OLIPHANT—3.