51 N.J. Super. 186 (1958)
144 A.2d 25
GABRIEL KIRZENBAUM, LAWRENCE J. MEYERS AND WILLIAM MARMORSTEIN, PLAINTIFFS,
v.
CHESTER W. PAULUS, MAYOR OF THE CITY OF NEW BRUNSWICK, HERBERT J. DAILEY, LUKE J. HORVATH, FELIX N. CANTORE AND JAMES A. McGARRY, BEING THE BOARD OF COMMISSIONERS OF THE CITY OF NEW BRUNSWICK, N.J., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided July 11, 1958.
*189 Mr. Gabriel Kirzenbaum, attorney for the plaintiffs.
Mr. Frederick F. Richardson, attorney for the defendants.
VOGEL, J.S.C.
The factual situation in this case projecting the legal issue involved arises out of the construction of a sidewalk depository abutting the premises owned by the National Bank of New Jersey.
A brief summary of the facts indicates that the Board of Commissioners of the City of New Brunswick, New Jersey, adopted an ordinance on September 12, 1933 which, in substance, prohibited the encumbrance and obstruction of sidewalks on the streets of the city, and further provided against the maintenance of a nuisance thereon. Thereafter, on December 18, 1951, the mayor and board of commissioners of the city passed a resolution granting the National Bank of New Jersey permission to install a sidewalk or curb depository on Church Street; and in 1953, by virtue of the resolution, the National Bank of New Jersey constructed and erected the curb teller's cage.
The plot plan of the depository was admitted into evidence, and indicates its dimensions. It is 10 inches inside the curb, and on the sidewalk area 24 inches by 28 inches, and 5 feet 8 inches in height. There is an unobstructed sidewalk width between the curb teller and the bank building of 7 feet 4 inches. It has an open window facing toward the street, and accommodates patrons of the bank, who may drive their motor vehicles to the teller and make deposits therein.
The facts further reveal that on November 20, 1956 the Board of Commissioners of the City of New Brunswick *190 adopted an ordinance amending the 1933 ordinance, and provided in substance for the prevention of an encumbrance of sidewalks dedicated to public use, except "in any case where the Board of Commissioners shall find and determine, by Resolution duly passed and adopted, that the same is necessary or desirable in the interest of the public welfare, public safety, or for the improvement of traffic conditions and the flow and movement of traffic in the City of New Brunswick."
The latter ordinance also provided:
"Prior to the passage and adoption of any Resolution permitting any article whatever to be placed and remain upon any sidewalk as aforesaid, the Chief of Police, the Director of Public Safety, the City Engineer, and the Chairman of the Traffic Commission, shall examine into the facts pertaining to the same and report in writing to the Board of Commissioners the said facts so found by them."
There was a further provision providing for the repeal of all other ordinances or parts thereof inconsistent herewith.
The testimony reveals that the plaintiff, Gabriel Kirzenbaum, appeared before the Board of Commissioners of the City of New Brunswick during one of their executive sessions in 1956, protested, and advised the commission that in his opinion they lacked the authority to make the grant now under review, and that the resolution granting the right to the bank to construct the curb depository was unconstitutional and was tantamount to an interference with a public easement.
In this climate the plaintiff, Gabriel Kirzenbaum, a resident of the City of New Brunswick and a member of the bar of this State, filed a complaint in lieu of prerogative writ, joined by Lawrence J. Meyers and William Marmorstein, who are also residents and taxpayers of the city, on January 29, 1957.
Cross-motions for summary judgment were likewise served by the parties, and arguments thereon heard by the court, which were denied, with a direction for the taking of testimony.
In March 1958 the Board of Commissioners of the City of New Brunswick adopted a resolution in conformance with *191 the provisions of the ordinance adopted in 1956, which provided among other matters for an inspection by the director of public safety, the chief of police, city engineer, and chairman of the traffic commission to examine into the facts and report in writing to the board of commissioners the facts so found by them.
The record revealed that the examination was made, but one of the authorized officers had failed to sign the investigatory report; and thereafter the Board of Commissioners of the City of New Brunswick adopted a final resolution with respect to the matter under review on May 6, 1958, predicated upon the inspection as provided for in the 1956 ordinance, and signed by the proper officers designated in the ordinance.
Before the taking of testimony on July 7, 1958 the plaintiff, Gabriel Kirzenbaum, on motion directed to the court, sought to foreclose any further consideration by the court of action taken by the board of commissioners after March 1958, on procedural grounds.
The record, however, indicates that the defendant city rested its case in March 1958, but that the plaintiff, Gabriel Kirzenbaum, sought and obtained leave of the court for the taking of additional testimony, and a peremptory trial date was fixed for July 7, 1958. Although the method employed by the city in notifying the court and counsel of the action taken by the board of commissioners in March and May of 1958 was informal, the record reveals that the court and counsel were served with copies of the resolutions, and resulted in no prejudice or surprise to counsel. On this basis the plaintiffs' motion was denied.
The National Bank of New Jersey is located on the corner of George Street where it is intersected by Church Street. George Street is generally regarded as the main business section of the community, and the most important intra-city arterial highway. Church Street, which runs at right angles to George Street, is one of the narrowest of city streets, having a width of approximately 23 feet. The said depository is located on Church Street on the sidewalk adjacent to the *192 banking building, distant westerly from the northerly line of George Street 80 feet more or less.
The defendant city urges that the complaint be dismissed on the ground that the plaintiffs, having failed to assert a private, direct or material injury beyond that which has been suffered by the public at large, are thereby barred from prosecution of the complaint.
This issue has been resolved in favor of the plaintiffs as residents and taxpayers, in view of the recognition by the Supreme Court of the "broad right in taxpayers and citizens of a municipality to seek review of local legislative action without proof of unique financial detriment to them." Kozesnik v. Montgomery Township, 24 N.J. 154, at page 177 (1957), and cases cited therein.
The court is not unaware that the above-cited case may be differentiated from the case at bar. However, in view of the importance of the question involved, the principle enunciated is extended to qualify the plaintiffs herein.
The defendants' asseveration that the plaintiffs' failure to comply with R.R. 4:88-15, and also that they are guilty of laches, is academic, in view of the fact that the defendant city adopted a resolution as recently as March 18, 1958, granting permission to the bank to maintain a sidewalk depository.
The plaintiffs, on the other hand, contend that the action taken by the defendant city:
(a) Is contrary to the law of the State of New Jersey and is an ultra vires act;
(b) Is in contravention of the terms of the 1933 ordinance, which barred sidewalk impedimenta;
(c) That the resolution granting the permission is in deprivation of public rights in and to the sidewalks and the parking rights on the northerly side of Church Street in the vicinity of the curb depository;
(d) Is contrary to Art. VIII, Sec. III, par. 3, and is also violative of Art. IV, Sec. VII, par. 10, of the New Jersey Constitution (1947).
*193 The parties have conceded up to this point that the action taken by the board of commissioners of the defendant city, in so far as the resolution of 1951 is concerned, was in contravention of the 1933 ordinance, which imposed the restriction and was an illegal and ultra vires act.
The plaintiffs likewise assail the ordinance adopted in 1956, which amended the 1933 ordinance providing for the exceptions authorizing sidewalk encumbrances, on the ground that the ordinance does not provide any reasonable standards to govern the operation thereof.
The record also reveals that the resolution adopted in March of 1958 by the board of commissioners of the defendant city was defective, in that the inspection report required under the terms of the ordinance failed to include the signatures of all the authorized officers. In order to cure this patent defect the defendant city again adopted a resolution on May 6, 1958, granting the right to the bank to construct the sidewalk depository which the plaintiffs seek to have removed.
The sole question in this case, shorn of all legal habiliments, is whether a municipality has the power to issue a permit to a private institution for construction of an encumbrance upon a sidewalk subject to the public easement, and ground such action in the interest of public welfare; and thereby traverse an avenue in which a public easement exists, and pave the way in the interest of public welfare, public safety, and for the improvement of traffic conditions and the flow and movement of traffic in said area.
I have already indicated that the area involved is the hub of the wheel encircling the commercial center of the city, with ensuing motor traffic attendant thereon.
The evidence adduced in this case through the testimony of the mayor of the city, the chief of police, a traffic sergeant and the director of planning and traffic, indicates that since the construction and erection of the sidewalk depository traffic congestion has been eased; that "before the installation cars would be parked on Church Street by patrons of the bank, that caused a stoppage of the flow of traffic both *194 on Church and George Streets"; "Traffic has improved, and that Church and George Streets is one of the main intersections of the city." This testimony was in nowise negated by the plaintiffs, and I find as a fact that traffic conditions improved after the installation of the curb depository.
The case of Union Towel Supply Co. v. Jersey City, 99 N.J.L. 52 (Sup. Ct. 1924), enunciates the principle that a municipal ordinance which permitted a property owner to erect a structure on the sidewalk and thereby caused a specific injury to an adjoining owner, entitled the injured party to test the legality of a municipal ordinance authorizing the erection of such structure. The case further held that the term "regulate" in Article 22 of the Home Rule Act (L. 1917, c. 152), which provided for a delegation to a municipal body of the power "(d) To prevent or regulate the erection or construction of any stoop, step, platform, * * *," does not connote the power of appropriation or confiscation of individual or property rights; hence, a municipal ordinance which grants to a property owner the right to erect and maintain a platform on the public highway in front of his property, cannot be legalized under certain statutory enactments which, in effect, give to the municipality the right to regulate the use of streets and highways. Justice Minturn also stated:
"A municipality has no power to authorize the use of streets by private persons from which neither the city nor the public derives any consideration or benefit, except where such use is temporary, or the power has been specifically delegated by the Legislature."
The statutory delegation to a municipality referred to hereinabove is substantially the same as R.S. 40:67-1, with which we are presently concerned. In essence, therefore, the question that must be resolved is whether there is any legal basis for arriving at a decision that contravenes the principle enunciated in the cited case. The decision in that case was handed down in 1924, and the principles applied flowed from the Constitution of 1844, which followed the common law view of strict construction in issues such as are here posed.
*195 The present Constitution, Art. IV, Sec. VII, par. 11, provides:
"The provisions of this Constitution and of any law concerning municipal corporations formed for local government, or concerning counties, shall be liberally construed in their favor. The powers of counties and such municipal corporations shall include not only those granted in express terms but also those of necessary or fair implication, or incident to the powers expressly conferred, or essential thereto, and not inconsistent with or prohibited by this Constitution or by law."
R.S. 40:67-1 provides:
"The governing body of every municipality may make, amend, repeal and enforce ordinances to:

* * * * * * * *
(d) Prevent or regulate the erection and construction of any stoop, step, platform, window, cellar door, area, descent into a cellar or basement, bridge, sign, or any post, erection or projection in, over or upon any street or highway, and for the removal of the same at the expense of the owner or occupant of the premises where already erected."
In the opinion of this court the term "regulate" in the cited statute is held to constitute a delegation of power by the Legislature to the municipality to authorize and encumbrance such as is here contemplated if, in the opinion of the municipal body, such authorization is in the public interest, with particular reference to the improvement of traffic conditions, and thereby affecting the safety and welfare of its citizens.
A contrary view would constitute a limitation upon the intendment of the statute, and provide an interpretation wholly illogical and a repudiation of the justification for the passage of the act. If the Legislature empowered a municipality to regulate the subject matter of the issue in this case, by necessity it must have contemplated the existence of the subject matter. To hold otherwise would be tantamount to a characterization of the statutory verbiage, ascribing thereto innocuity.
The power to regulate must of necessity lend itself in the instant case to an equally broad and comprehensive interpretation *196 under and by virtue of Art. IV, Sec. VII, par. 11, of the Constitution (1947), previously cited. Monmouth Lumber Co. v. Ocean Township, 9 N.J. 64 (1952); Bruno v. City of Long Branch, 21 N.J. 68 (1956); Adams Newark Theatre Co. v. City of Newark, 22 N.J. 472 (1956).
Aside from the necessity for compliance with specific constitutional and statutory provisions proscribing the limits of the exercise of the power, the requisite test for validity of a municipal ordinance of this nature is that it be reasonable, and the burden of proof is upon those who attack the ordinance to show that it is unreasonable in the relation of the regulation to the health, safety, morals, or the general welfare of the community. Collins v. Board of Adjustment of Margate City, 3 N.J. 200, 206 (1949); State v. Mundet Cork Corp., 8 N.J. 359 (1952); Brandon v. Board of Com'rs of Town of Montclair, 124 N.J.L. 135, 149 (Sup. Ct. 1940).
The plaintiffs' assault upon the ordinance under review resides in the contention that the municipality lacked the statutory authority to grant the permit providing for the alleged encumbrance.
Any suggested weakness in a determination that the municipality lacked the authority by virtue of R.S. 40:67-1, is mediated by the provision of R.S. 40:48-2, which provides:
"Any municipality may make, amend, repeal and enforce such other ordinances, regulations, rules and by-laws not contrary to the laws of this state or of the United States, as it may deem necessary and proper for the good government, order and protection of persons and property, and for the preservation of the public health, safety and welfare of the municipality and its inhabitants, and as may be necessary to carry into effect the powers and duties conferred and imposed by this subtitle, or by any law."
Two interpretations of the above-quoted statute have been recorded in our decisional law: (1) That since the last clause, beginning with the words "and as may be necessary * * *" is in the conjunctive, it confers no separate and distinct powers upon a municipality, but merely grants in terms powers incidental to those conferred by other statutes; the other, that the statute constitutes an expressed grant of *197 broad governmental and police powers to all municipalities, and that the last clause is merely an added grant of incidental powers. This latter view finds considerable support in the cases, R.S. 40:48-2 being frequently cited as a source of general municipal police powers. Fred v. Mayor, etc., Old Tappan Borough, 10 N.J. 515, at page 520 (1952) and cases cited therein.
The late Chief Justice Vanderbilt, in the above-cited case stated:
"This interpretation of R.S. 40:48-2 as an express grant of general police powers to municipalities has been made impregnable by the continued legislative acquiescence therein, by the mandate of Article IV, Section VII, paragraph 11 of the Constitution of 1947, that acts concerning municipalities be liberally construed, and by the adherence thereto of the more recent judicial decisions. [Citing cases.] If more be needed, we refer to the recent decision in State v. Mundet Cork Corp., supra, 8 N.J. 359, 369 (1952), wherein we held that the enactment of an air pollution ordinance was `a function of the police power conferred on municipalities by R.S. 40:48-2, * * * for the protection of the welfare of their residents.'"
It is obvious, therefore, that the above-quoted statute must be considered as an express grant of broad general police powers to a municipality. Such an interpretation is consonant with other broad grants of powers to municipalities, such as zoning powers. The consensus of judicial fiat expresses the view that under and by virtue of the provisions of R.S. 40:48-2 a municipality has authority to take such action "as it may deem necessary and proper for the good government, order and protection of persons and property, and for the preservation of the public health, safety and welfare of the municipality and its inhabitants," subject, of course, to constitutional and statutory limitation.
If a municipality, under and by virtue of the quoted statute, under its police power had the right to legislate on a local level the matters of air pollution and excavation or removal of soil, can it be seriously contended that the defendant city in the instant case lacked the authority under its police power to regulate the movement and free flow of vehicular traffic in the City of New Brunswick, and employ *198 as a medium the issuance of a permit for the construction of the curb depository in order to relieve the congestion that existed, in the interest of the welfare of the community? There is no doubt in my mind but that this broad grant of police power encompasses the authority to enact an ordinance providing for a grant of the permit in question in order to relieve the traffic problem.
Common knowledge of the problem, supported by the testimony presented in open court, indicates that the ordinance under review may not only have been desirable, but also necessary in the interest of the public welfare and public safety, and for the improvement of traffic conditions and the flow and movement of traffic in the City of New Brunswick.
The conclusions herein recorded are dispositive of the contention that there was a deprivation of public rights in and to the sidewalks and the parking rights on the northerly side of Church Street in the vicinity of the curb depository; except to emphasize that the adoption of the ordinance, though technically restricting such public rights, was a reasonable exercise of the police power vested in the municipality, and ultimate benefits to the whole community derived therefrom.
Plaintiffs further contend that the ordinance permitting the structure in question is discriminatory, a violation of due process, and fails to set up proper standards in the ordinance.
In the case of Township of Raritan v. Hubb Motors, 26 N.J. Super. 409 (App. Div. 1953), the principle was enunciated that:
"In order that an ordinance be not discriminatory, it must be uniform as to all persons; the discretion vested in the authority must not be absolute, but limited by regulations, and implemented by a norm or standard therein laid down for guidance in its application to all persons."
The ordinance of 1956 provides:
"Excepting in any case where the Board of Commissioners shall find and determine by Resolution duly passed and adopted that the *199 same is necessary or desirable in the interest of the public welfare, public safety, or for the improvement of traffic conditions and the flow and movement of traffic in the City of New Brunswick."
Certainly, the language in the ordinance is clear and incisive with respect to recognizing the limitation that the law imposes and clearly meets the test.
We are of the opinion that there is no violation of "due process," and that proper standards reflected in the ordinance, circumscribed by its terminology "In the interest of public welfare, public safety, and for the improvement of traffic conditions and the flow and movement of traffic in the City of New Brunswick," not only establish the required standards, but would also bar the prospect of arbitrary grants.
It is apparent that the subject matter legislated by the ordinance does not lend itself to any standards beyond those already specified in the ordinance.
The court does not accept the contention by the plaintiffs that the ordinance of 1956, and the subsequent resolutions predicated thereon, are incompatible with Art. VIII, Sec. III, par. 3 of the Constitution (1947), which provides:
"No donation of land or appropriation of money shall be made by the State or any county or municipal corporation to or for the use of any society, association or corporation whatever."
The permit which the plaintiffs seek to have rescinded is not a donation of land.
"It has always been the law of this State, both at the common law and under the eminent domain statute, that the land of the abutting owner was merely charged with the easement of public travel and the necessary incidents thereof and the fee to the land to the middle of the road remained in the abutting owner." Valentine v. Lamont, 13 N.J. 569 (1953).
Does the action here constitute a donation of land within the purview of the constitutional language? The granting of the permit to the National Bank is not a donation of land, but is, on the other hand, a grant to an abutting owner for *200 permission to use a portion of a public easement; again, in the interest of public safety, welfare, etc.
Under and by virtue of R.S. 40:67-1(b) a municipality is empowered to vacate a public street or any portion thereof. It is obvious that a vacation of a public street by a municipal body likewise voids a public easement in that street without offending the constitutional provision that prohibits "a donation of public lands." Can it now be contended that the granting of a permit to an abutting owner for permission to use a portion of a public easement "in the interest of safety, public welfare, etc.," is a greater grant than that permitted by the statute empowering a municipality to vacate public lands? We think not.
It is well settled in this State that a municipality has only those powers granted to it by statute, albeit, by virtue of the constitutional provision here under review, those powers are to be liberally construed in favor of the municipality, and express grants of power are to be deemed to include those of necessary or fair implication or incident to the powers expressly conferred, or essential thereto.
Plaintiffs' argument that the court is precluded from a consideration of the action taken by the municipal body in the months of March and May of 1958, is without merit.
Resolutions granting the permit were adopted by the local governing body on March 18 and again on May 6, 1958, and the court, in rendering its decision, will consider the cause as being controlled by the ordinance and resolutions in effect at the time of the writing of this decision, which post-dates the final hearing held July 7, 1958. Roselle v. Mayor, etc., Moonachie, 48 N.J. Super. 17 (App. Div. 1957), affirmed on re-hearing in 49 N.J. Super. 35 (App. Div. 1958).
Other issues raised in the pleadings, as well as on argument, in behalf of the plaintiffs, need not be decided, in view of the court's conclusions.
For the reasons embodied in this opinion, the court concurs in the action taken by the board of commissioners of the defendant city.