Argued June 19, affirmed July 30, petition for rehearing denied
September 8, petition for review denied November 10, 1970

CITY OF PORTLAND, *Respondent, v.* LLOYD A.
FRY ROOFING COMPANY, No. 51239, No. 51240,
*Appellant.*

472 P2d 826

*Herbert H. Anderson,* Portland, argued the cause for appellant. With him on the briefs were McColloch, Dezendorf, Spears & Lubersky and Anthony J. Barker, Portland.

*William H. Breck,* Deputy City Attorney, Portland, argued the cause for respondent. With him on the brief was Marian C. Rushing, City Attorney, Portland.

Before SCHWAB, Chief Judge, and FOLEY and BRANCHFIELD, Judges.

## BRANCHFIELD, J.

Defendant was charged with two different violations of the Air Quality Control Code of the city of Portland. It was found guilty in municipal court and appealed to the circuit court for Multnomah County. Upon trial in circuit court without a jury, defendant was again found guilty in both cases.

The defendant's first assignment of error is as follows:

"The ordinance under which the defendant was convicted and fined is void because it violates the

Fifth and Fourteenth Amendments to the Constitution of the United States, and Article I, Section 20 of the Constitution of the State of Oregon in that it establishes no standard of guilt ascertainable by persons of common intelligence, and makes the guilt or innocence of the accused depend upon the subjective judgment of officers of the enforcement agency."

The Portland Air Quality Control Code in effect at the time of the offenses charged in these cases provided:

"*  *  *  *  *

"(a) A person shall not discharge into the atmosphere from any single source of emission whatsoever any air contaminant for a period or periods aggregating more than three minutes in any one hour,  *  *  * which is:

"1. As dark or darker in shade as that designated as No. 2 on the Ringelmann Chart, as published by the United States Bureau of Mines, or

"2. Of such opacity as to obscure an observer's view to a degree equal to or greater than does smoke described in subsection (a) 1. of this section.

"*  *  *  *  *"

Both of the charges here were for violation of the portion of the ordinance relating to opacity.

Air pollution has perplexed public authorities since at least 1306, when the use of "sea-coal" (as distinguished from charcoal) was forbidden on penalty of death. See Kennedy and Porter: Air Pollution: Its Control and Abatement, 8 Vand L Rev. 854 (1954-55).

The only witness in the case was a former employee of the city of Portland who testified to his ob-

servation of the smoke being emitted from defendant's smoke stack on the days in which defendant was charged with violations. He explained that No. 2 on the Ringelmann Chart was equal to 40 per cent opacity. That is, if 40 per cent or more of the view of a background object sought to be viewed by the observer is obscured by the smoke, there is a violation of the ordinance. The witness stated that he was able, as the result of his training and experience, to determine the percentage of opacity without the necessity of having a Ringelmann Chart before him while making his observations. In *People v. International Steel Corp.*, 102 Cal App 2d 935, 938-39, 226 P2d 587, 590-91 (1951), the court gave an excellent description of the Ringelmann Chart and its use:

"While, as already stated, the courts take notice of the Ringelmann Chart, our notice in this case is fortified by a copy which was introduced in evidence and is in the record. It is a plain white piece of paper divided into four sections, numbered from 1 to 4 and each about $5\frac{3}{4}$ x $7\frac{3}{4}$ inches in size. On each of these sections is printed a series of intersecting heavy black lines of uniform width for each section, with the lines growing progressively wider from section 1 to section 4, until on section 4 the black covers much more than half of the surface. This chart refers to Bureau of Mines Information Circular No. 6888, a copy of which is also in the record. From the chart and this circular, it appears that the chart is to be posted at a distance of 50 feet from the observer. When so posted the black lines and the white spaces merge into each other, by a process of optical illusion, so as to present the appearance of a series of gray rectangles of different color densities, No. 4 being the densest. Estimate of the density of smoke may be made by glancing from this chart so displayed to smoke, and picking out the section on the chart which most nearly resembles the smoke. This mode of measur-

ing the density of smoke has been in use, it appears, for over fifty years. This affords a reasonably certain mode of determining and stating the density and opacity of smoke, and we think that the statute adopting it is not lacking in certainty."

■ The trial judge in this case prepared a carefully written opinion. We quote and adopt that portion of his opinion dealing with defendant's constitutional objections:

"Defendant contended that the ordinance was unconstitutional because it:

"(a) Established no standard of guilt ascertainable to persons of common intelligence;

"(b) Contains no standards likely or calculated to produce uniform application, and;

"(c) Makes the guilt or innocence of defendant dependent upon the whims and vagaries of opinion testimony produced by officers of the enforcing agencies.

"All of these contentions, and a number of others have been presented to various courts. All have been firmly rejected. The cases are to be found in the annotation at 78 ALR2 1305. Perhaps the most comprehensive opinion is to be found in the California case, *People v. Plywood Mfrs. of Calif.*, [138 Cal App 2d 859,] 291 P2 587 [(1955)]. That opinion dealt with the Ringelmann Chart (and Test); also, it discussed the qualification of witnesses in such cases, as well as the other defenses asserted in those cases.

"The question of whether pollution control legislation violates federal constitutional principles was laid to rest more than half a century ago. The United States Supreme Court in *N. W. Laundry v. Des Moines*, 239 US 486, [36 S Ct 206, 60 L Ed 396 (1915)] enunciated the following rule:

"'So far as the Federal Constitution is concerned, we have no doubt the state may by itself, or through authorized municipalities, declare

the emission of dense smoke in cities or populous neighborhoods a nuisance and subject to restraint as such; and that the harshness of such legislation, or its effect upon business interests, short of a merely arbitrary enactment, are not valid constitutional objections. Nor is there any valid Federal Constitutional objection in the fact that the regulation may require the discontinuance of the use of property, or subject the occupant to a large expense in complying with the terms of law or ordinance.'

"The use of the Ringelmann Smoke Chart and Test has been approved, as mentioned above, in California, *People v. Plywood Mfrs.*, supra; *People v. Inter. Steel* [102 Cal App 2d 935], 226 P2d 587 [(1951)]; Tennessee, *Penn-Dixie v. City of Kingsport* [189 Tenn 450], 225 SW2d 270 [(1949)]; New Jersey, *State v. Mundet Cork Corp* [8 NJ 359], 86 A2d 1 [(1952)]; and Washington, *Sittner v. Seattle* [62 Wash2d 834], 384 P2d 859 [(1963)]. Indeed, statutes have been upheld (in the face of attacks such as made here) even where they are far less definite than this one. For example, as early as 1904 a Minnesota Court upheld an ordinance declaring it to be a nuisance to emit 'dense smoke'; *St. Paul v. Haugbro* [93 Minn 59]. 100 N.W. 470 [(1904)]. See also a similar Cleveland ordinance in *Cleveland v. Bradley*, 10 Ohio L Rep 608 [(1913)]. Also, a California statute was upheld even though it outlawed discharge into the atmosphere of 'excessive smoke.' *People v. Madearos* [230 Cal App 2d 642], 41 Cal. Rptr. 269 [(1969)].

"Defendant contends the ordinance is bad because it provides no standard of guilt ascertainable to persons of common intelligence. But the Ringelmann Chart is an easily understood standard for testing density of smoke. And there is no mystery in such standards as opacity and obscuration. Surely it needs no expertise for defendant's officials, or anyone else, for that matter, to know that one can see half or less of the West Hills, Mt. Hood,

or St. John's Bridge because of the presence of a plume of smoke. Nor does it take a post-graduate course or a Ph.D. to realize that this would 'unreasonably interfere with enjoyment of life' of the people of Portland. As the California Court said in *People v. Plywood Mfrs.*:

> " 'One does not have to have a color chart in his hands to recognize a red flower, a blue sky, or a black bird.' 291 P2d at 591.

"With respect to the other vagueness contentions, it is enough to say that people daily are convicted of crimes involving not only fines, but jail and prison sentences as well, where the outcome depends upon estimates and the use of a certain amount of intelligence in evaluating one's own activities. As Justice Holmes once said, in an antitrust case:

> " '. . . the law is full of instances where a man's fate depends upon his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree. If his judgment is wrong, not only may he incur a fine or short imprisonment . . . he may incur the penalty of death.' *Nash v. U. S.*, 229 US 373, [33 S Ct 780, 57 L Ed 1232 (1912)]."

■ ■ Defendant's other assignments of error do not involve constitutional questions. We have no jurisdiction to consider appeals from circuit court involving ordinance violations arising in the municipal court, except when constitutional questions are involved. ORS 221.360, *City of Portland v. Trumbull Asphalt Co.*, 2 Or App 1, 463 P2d 606, Sup Ct *review denied* (1970); *City of Portland v. Fry Roofing Co.*, 2 Or App 185, 465 P2d 494, Sup Ct *review denied* (1970). The city did not object to our consideration of questions other than constitutional, but jurisdiction cannot be conferred on this court by the failure of a party to protest.

Affirmed.