510 P.2d 907 (1973)
WESTERN ALFALFA CORPORATION, a Kansas corporation, Petitioner-Appellee,
v.
AIR POLLUTION VARIANCE BOARD of the State of Colorado, Respondent-Appellant.
No. 71-494.
Colorado Court of Appeals, Div. II.
April 3, 1973.
Rehearing Denied April 24, 1973.
Certiorari Denied June 25, 1973.
*908 Linde, Thomson, Van Dyke, Fairchild & Langworthy, George D. Blackwood, Kansas City, Mo., Houtchens, Houtchens & Dooley, S. Robert Houtchens, Greeley, Lee, Bryans, Kelly & Stansfield, Donald D. Cawelti, Denver, for petitioner-appellee.
Duke W. Dunbar, Atty. Gen., William Tucker, Asst. Atty. Gen., Denver, for respondent-appellant.
Not Selected for Official Publication.
PIERCE, Judge.
On June 16, 1969, Western Alfalfa Corporation received a cease and desist order from the Division of Administration of the Colorado Department of Health (Division) advising them that the emissions from three of their plants in Northern Colorado were not in compliance with the Air Pollution Control Act (Act), and ordering them pursuant to the provisions of 1967 Perm. Supp., C.R.S.1963, 66-29-10(3), to cease *909 and desist from any further violations of the Act. Within ten days from receipt of the cease and desist order, Western filed with the Air Pollution Variance Board (Board) a denial that it was in violation of the Act.
The Board held a hearing in September of 1969. At this hearing, a witness for the State testified that he had made observations on the premises of Western on June 4, 1969, from which he concluded that Western was in violation of the Act. The readings taken purportedly registered darker in shade than a No. 2 on the Ringelmann chart, contrary to the terms of 1967 Perm.Supp., C.R.S.1963, 66-29-5.
The Ringelmann chart is an instrument, assigning numerical values to various gradations of smoke color, as they appear on the chart. A party using the chart matches the color and density of the alleged smoke pollutant under observation with the numbered example on the chart. This test is sanctioned by the Act as the minimum valid method of determining whether or not the Act is being violated, and is presumptively valid. Fry Roofing Co. v. State Department of Health, Colo., 499 P.2d 1176. This method of measuring air pollution is generally sanctioned. See City of Portland v. Fry Roofing Co., 3 Or.App. 352, 472 P.2d 826 for a collection of cases approving the Ringelmann chart.
Western countered this evidence with Ringelmann readings taken approximately one year earlier by a consulting engineer hired by Western, which showed no violation. They also offered the results of a sophisticated test conducted at their plant by an independent engineering firm some months after they were issued the cease and desist order. Western contends that this test established that they were not in violation of the Act.
The Board concluded that Western's operations were in violation of the Act. It further determined that it would not accept the report of the independent engineering firm because the method of testing was not acceptable to the Division as required by the statute. 1969 Perm.Supp., C.R.S.1963, 66-29-5(2)(e).
Thereafter, Western filed suit in the district court pursuant to the terms of 1967 Perm.Supp., C.R.S.1963, 66-29-13, seeking to have the cease and desist order set aside as not being in compliance with the law. The trial court reversed the Board. We affirm the conclusion and judgment of the trial court.
The Act, as it then existed,[1] established the approach that the Division was to use in searching out and stopping violations. Specifically, the Division had the duty to determine, by means of field studies and air samples, the ambient air standard in any area in the state. 1967 Perm.Supp., C.R.S.1963, 66-29-8. This included the authority to enter and inspect any property for the purpose of investigating either an actual or a suspected source of air pollution. 1967 Perm.Supp., C.R.S.1963, 66-29-8(2)(d).
In the instant case, the evidence that resulted in issuance of the cease and desist order was gathered by a field inspector from the Division, who entered the premises of Western on June 4, 1969, without the knowledge or consent of anyone from Western, and made his readings. It was not until Western received the cease and desist order that it was aware of the fact that someone had been on its premises collecting evidence for a case against it. This fact convinces us that the hearing afforded Western lacked the fundamental elements of due process of law, since the secret nature of the investigation foreclosed Western from putting on any rebuttal evidence.
We conclude that the act of conducting tests on the premises of Western *910 without either a warrant or the consent of anyone from Western, constituted an unreasonable search. Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L. Ed.2d 930; See v. City of Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943. In Camara the Supreme Court made it clear that searches by administrative agencies must be reasonable and must either be based upon the consent of the person who owns the premises, or must be pursuant to a warrant. It was further made clear that this rule is not confined to criminal prosecutions. On the facts of this case, it was necessary for the field investigator to comply with this requirement. We note that this provision was added to the Act by an amendment subsequent to the events in question. 1969 Perm.Supp., C.R.S.1963, 66-29-8(2)(d).
Western could not effectively rebut the evidence against it since it had no representative present at the time the test was administered, nor did it have any knowledge of the nature of its emissions on the date in question. This is particularly important since the Board made it very clear that the only evidence which was probative of whether Western was in violation of the Act was evidence which would rebut the evidence of the alleged violation on June 4, 1969. Since violations of the Act can be based upon emissions aggregating three minutes or more during any hour, 1967 Perm.Supp., C.R.S.1963, 66-29-5(2)(a), and since the evidence by its very nature is continually dissipating, we conclude that it is constitutionally mandatory in this type of case that the party accused be aware of the taking of tests and measurements on its premises at the time they are made.
Had Western known of the field observer being on its premises on the date of the investigation, it would have had a reasonable opportunity to effectively exercise its rights of confrontation at the hearing before the Board. 1969 Perm.Supp., C.R.S. 1963, 3-16-4. Imposition of the Camara rule assures fundamental fairness in this type of situation. The failure to provide this protection resulted in a violation, in this case, of the Fourth Amendment to the United States Constitution.
Judgment affirmed.
SILVERSTEIN, C. J., and DWYER, J., concur.
NOTES
[1] The statute presented to us for construction has been repealed in its entirety, and re-enacted as the Air Pollution Control Act. 1971 Perm.Supp., C.R.S.1963, 66-31-1 et seq. The new Act has been upheld from a constitutional attack in Fry Roofing Co. v. State Department of Health, Colo., 499 P.2d 1176.